470 F.Supp.2d 665 (2006)
Larklynn PRICE, Plaintiff,
v.
JEFFERSON COUNTY, Defendant.
Civil Action No. 1:05-CV-290.
United States District Court, E.D. Texas, Beaumont Division.
September 20, 2006.
*667 *668 *669 *670 *671 *672 *666 *673 Laurence Wade Watts, Watts & Associates, Missouri City, TX, for Plaintiff.
Larry James Simmons, Jr., Pamela D. Williams, Germer Gertz, Beaumont, TX, for Defendant.

MEMORANDUM AND ORDER
CRONE, Judge.
Pending before the court is Defendant Jefferson County's ("the County") Motion for Summary Judgment (# 15). The County seeks summary judgment on an action brought by Plaintiff Larklynn Price ("Price"), alleging racial discrimination and retaliation under the Texas Commission on Human Rights Act, TEX. LAB.CODE ANN. §§ 21.001-21.306 ("TCHRA"), and equal protection violations arising under the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("§ 1983"). Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that summary judgment is warranted on Plaintiffs federal claims and that her state law claims should be remanded to the 58th Judicial District Court of Jefferson County, Texas.
I. Background
Price, an African-American female, was hired by the County as a secretary in the Engineering Department in February 1989 after submitting a written application. At that time, Robert Stroder ("Stroder") was the acting County Engineer. Plaintiff asserts that she was the only African-American clerical staff member who worked in the Engineering Department.
In approximately 1993, Price was reassigned from her position as a secretary in the Engineering Department to a position as an engineering technician in the field. Price alleges that the decision regarding reassignment was made by Stroder. Plaintiff did not, at that time, file a grievance with any County representative or file a charge of discrimination alleging the reassignment was a race-based action. In connection with this reassignment, Price received a pay raise.
In 1998 or 1999, after working as a field technician for approximately five years, Price was reassigned to the secretarial position that she had previously held in the Engineering Department. Her immediate supervisor at that time was the office manager, Sonia Gonzales ("Gonzales"), a Hispanic female. Price alleges that this decision regarding reassignment was, made by the acting County Engineer, John Cannatella *674 ("Cannatella"). Plaintiff did not submit a grievance to any County representative contending the reassignment was based on race. Again, Price received a salary increase as a result of her reassignment. Thereafter, Price was at the top of the pay scale for her secretarial position and was not eligible for any raises. Plaintiff, however, received annual lump sum payments of $1,200.00 in 2000 and $1,200.00 in 2001.
Wendy Whittaker ("Whittaker"), a Hispanic female, assumed the position of office manager on May 28, 2002, and became Price's immediate supervisor. While Plaintiff did not submit an application for this job vacancy, she nonetheless argues that she was denied this promotional opportunity. Price asserts that she was more qualified than Whittaker, who allegedly had difficulty with the English language, lacked telephone skills, and struggled with clerical tasks. Price also alleges that, while serving as office manager, Whittaker tormented her. Plaintiff remained in the secretarial position until her termination in November 2002.
Defendant alleges that throughout her employment with the County, Price had poor attendance. As a result of her alleged problems with absenteeism, Price often had to utilize unpaid leave after exhausting her paid leave. Accordingly, several of her supervisors gave Price reprimands and warnings concerning excessive absenteeism. Price concedes that she began receiving reprimands related to poor attendance in 1997 from acting County Engineer Roy Rodriguez ("Rodriguez"). Plaintiff also acknowledges that on October 5, 1999, Cannatella issued a written reprimand addressing Price's poor attendance and advising her that future problems could result in further disciplinary action, up to and including termination. At that time, Price did not file a grievance with any County official or a charge of discrimination alleging that the reprimand was discriminatory.
In addition to her problems with absenteeism, Price was counseled for excessive personal telephone use and failures related to the office filing system. Acting Assistant County Engineer Jim Layne ("Layne") reprimanded Price in writing on August 2, 2001, about her alleged problems with excessive personal telephone use and the filing system, advising her that a lack of improvement could result in termination. During the spring of 2002, Price received additional counseling from acting Assistant County Engineer Melissa Guynes ("Guynes"), a Caucasian female, concerning her excessive telephone use and problems with the filing system.,
On September 3, 2002, Guynes gave Price a notice informing her that she was being suspended for three days as a result of an incident occurring on August 30, 2002, when she was purportedly rude and disrespectful to her immediate supervisor, Whittaker. Although there is some dispute as to the exact language used by Price during her exchange with Whittaker, Price concedes that she asked Whittaker whether she had to "kiss her butt" to obtain her paycheck. Guynes subsequently provided Price with another letter informing her that she was being placed on probation for thirty days. Price received her final written warning from acting County Engineer Jose Pastrana ("Pastrana"), a Hispanic male, on September 9, 2002. The written warning discussed Price's chronic absenteeism, excessive personal telephone use, and performance-related issues, including the previously-mentioned problems with the filing system. Prior to receiving this final' written warning, Price had received counseling on each of these problem areas.
*675 In September 2002, Whittaker was terminated as office manager, and Price approached Guynes about applying for the vacant position. Guynes, however, hired Martha Newsome ("Newsome"), a Caucasian female, to replace Whittaker in October 2002. Plaintiff argues that she was once again denied a promotional opportunity to become office manager. She admits, however, that she did not submit a written application for the available position, arguing that the job of office manager was not posted and that she spoke to Guynes about her interest in the position, Price also concedes that she had received her final written warning prior to Newsome becoming office manager and that she does not contend that she was more qualified than Newsome for the job in question.
On November 8, 2002, Pastrana met with Price to notify her that her employment with the County was being terminated. Guynes and Newsome were also present at this meeting. Pastrana cited Price's problems with absenteeism, telephone usage, the filing system, and professional conduct as the reasons for her termination. Price inquired into whether it was possible for her to be reassigned to a different position in lieu of being discharged, pointing out that similar arrangements had been made for other individuals and that she had worked as a County employee for thirteen years. Price was informed that reassignment was not possible. The County replaced Price with Ronney Nedd, an older African-American female.
Price appealed the termination decision to County Judge Carl Griffith to no avail. She proceeded to file a sworn charge of discrimination with the EEOC and Texas Commission on Human Rights ("the Commission") on November 18, 2002, relying on the theory of continuing violation. On or about May 15, 2003, she received a notice of right to sue from the EEOC. On July 8, 2003, Price received a notice of right to sue from the Commission. Price asserts that she was discriminated against because, unlike other County employees, she was reprimanded for receiving personal telephone calls and was required to provide twenty-four hours notice before taking time off. Moreover, she alleges that the County discriminated against her by improperly reassigning her to various positions, freezing her salary, denying her two promotional opportunities, and wrongfully terminating her employment. Defendant contends that during her employment with the County, Plaintiff never reported race-based discrimination to any County official or representative, filed a grievance about racial discriminatory acts, or submitted a charge of discrimination containing such allegations. Rather, the sole grievance filed by Price during her employment with the County concerned a reprimand she received for improper use of overtime and "comp" time, the only charge of discrimination she filed was after she had been terminated, and the only conversations she had with representatives of the County did not mention race.
On or about July 21, 2003, Price filed suit in the 58th Judicial District Court of Jefferson County, Texas, alleging a claim for wrongful termination in violation of the TCHRA. Price amended her petition on or about April 5, 2005, to include a cause of action for violation of her civil rights under § 1983. Pursuant to 28 U.S.C. § 1441, the County removed the case to this court on April 13, 2005, on the basis of federal question jurisdiction. On November 30, 2005, Jefferson County filed a motion for summary judgment on Price's causes of action for racial discrimination, retaliation, and violation of her constitutional rights under § 1983. Price filed her response on January 21, 2006.
*676 II Analysis
A. Summary Judgment Standard
Rule 56(c) of the. Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R.Crv.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Warfield v. Byron, 436 F.3d 551, 557 (5th Cir.2006); Lincoln Gen. Ins. Co. v. Reyna, 401 F.3d 347, 349 (5th Cir.2005); Martinez v. Schlumberger, Ltd., 338 F.3d 407, 411 (5th Cir.2003); Terrebonne Parish Sch. Bd. v. Mobil Oil Corp., 310 F.3d 870, 877 (5th Cir.2002).
"A fact is `material' if it `might affect the outcome of the suit under governing law.'" Bazan ex rel. Bazan v. Hidalgo County, 246 F.3d 481, 489 (5th Cir.2001) (emphasis in original) (quoting Anderson, 477 U.S. at 248, 106 S.Ct. 2505); see Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 454 (5th Cir.2005); Harken Exploration Co. v. Sphere Drake Ins. PLC, 261 F.3d 466, 471 (5th Cir.2001); Merritt-Campbell Inc. v. R×P Prods., Inc., 164 F.3d 957, 961 (5th Cir.1999); Burgos v. Southwestern Bell Tel. Co., 20 F.3d 633, 635 (5th Cir.1994). "Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248, 106 S.Ct. 2505. "An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." Bazan, 246 F.3d at 489 (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. 2505; accord EMCASCO Ins. Co. v. American Int'l Specialty Lines Ins. Co., 438 F.3d 519, 523 (5th Cir.2006); Cooper Tire & Rubber Co., 423 F.3d at 454; Harken Exploration Co., 261 F.3d at 471; MerrittCampbell, Inc., 164 F.3d at 961. The moving party, however, need not negate the elements of the nonmovant's case. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005); Wallace v. Texas Tech Univ., 80 F.3d 1042, 1047 (5th Cir.1996) (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994)).
Once a proper motion has been made, the nonmoving party may not rest upon mete allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. See Celotex Corp., 477 U.S. at 322 n. 3, 106 S.Ct. 2548 (citing FED. R. Cry. P. 56(e)); Anderson, 477 U.S. at 256, 106 S.Ct. 2505; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 11, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); EMCASCO Ins. Co., 438 F.3d at 523; Smith ex rel. Estate of Smith v. United States, 391 F.3d 621, 625 (5th Cir.2004); Malacara v. Garber, 353 F.3d 393, 404 (5th Cir.2003); Rushing v. Kansas City S. Ry. Co., 185 F.3d 496, 505 (5th Cir.1999), cert. denied, 528 U.S. 1160, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000). "[T]he court must review the record `taken as a whole.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 *677 L.Ed.2d 105 (2000) (quoting Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S.Ct. 1348); see Riverwood Int'l Corp. v. Employers Ins. of Wausau, 420 F.3d 378, 382 (5th Cir.2005). All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." Williams v. Time Warner Operation, Inc., 98 F.3d 179, 181 (5th Cir.1996); see Reeves, 530 U.S. at 150, 120 S.Ct. 2097; Lincoln Gen. Ins. Co., 401 F.3d at 350; Smith, 391 F.3d at 624; Malacara, 353 F.3d at 398; Brown v. City of Houston, 337 F.3d 539, 541 (5th Cir.2003); Harken Exploration Co., 261 F.3d at 471; Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir.), cert. denied, 534 U.S. 951, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001). The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in her favor. See Palmer v. BRG of Ga., Inc., 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990) (citing Anderson, 477 U.S. at 255, 106 S.Ct. 2505); Shields v. Twiss, 389 F.3d 142, 150 (5th Cir.2004); Martin v. Alamo Cmty. Coll. Dist., 353 F.3d 409, 412 (5th Cir. 2003); Martinez, 338 F.3d at 411; Gowesky v. Singing River Hosp. Sys., 321 F.3d 503, 507 (5th Cir.), cert. denied, 540 U.S. 815, 124 S.Ct. 66, 157 L.Ed.2d 30 (2003); Chaplin v. NationsCredit Corp., 307 F.3d 368, 372 (5th Cir.2002). The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir.1999); accord Boudreaux, 402 F.3d at 540; Little, 37 F.3d at 1075 (citing Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).
Nevertheless, "`only reasonable inferences can be drawn from the evidence in favor of the nonmoving party.'" Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (emphasis in original) (quoting H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc., 879 F.2d 1005, 1012 (2d Cir.1989)). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in [her] favor, and summary judgment should be granted." Id. at 468-69, 112 S.Ct. 2072. The nonmovant's burden is not satisfied by "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions," by speculation, by the mere existence of some alleged factual dispute, or "by only a scintilla of evidence." Little, 37 F.3d at 1075 (citations omitted); see Anderson, 477 U.S. at 247-48, 106 S.Ct. 2505; Warfield, 436 F.3d at 557; Boudreaux, 402 F.3d at 540; Wallace, 80 F.3d at 1047; Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir.1996). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." Brown, 337 F.3d at 541; see Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 332 (5th Cir.2004); Bridgmon v. Array Sys. Corp., 325 F.3d 572, 577 (5th Cir.2003); Hugh Symons Group, plc v. Motorola, Inc., 292 F.3d 466, 468 (5th Cir.), cert. denied, 537 U.S. 950, 123 S.Ct. 386, 154 L.Ed.2d 295 (2002).
Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. See Nebraska v. Wyoming, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); Celotex Corp., 477 U.S. at 322, 106 S.Ct. 254&; EMCASCO Ins. Co., 438 F.3d at 523; Cutrera v. Board of Supervisors of *678 La. State Univ., 429 F.3d 108, 110 (5th Cir.2005); Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). "In such a situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23, 106 S.Ct. 2548..
B. Evidentiary Issues
Evidence offered for or against summary judgment is "subject to the same standards and rules that govern the admissibility of evidence at trial." Rushing, 185 F.3d at 504 (citing Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 650 n. 3 (5th Cir.1992); Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 175-76 (5th Cir.1990), cert. denied, 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993)); accord Bain v. Honeywell Int'l, Inc., 257 F.Supp.2d 879, 881-82 (E.D.Tex. 2003). In its replies, the County objects generally to the evidence Price submits with her summary judgment response and sur-reply. The court will consider the disputed exhibits only to the extent they are not conclusory or speculative, are relevant, are based on personal knowledge, do not contain hearsay, or fall within an exception to the hearsay rule.
It is well settled that the Fifth Circuit "does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir.1996) (citing Thurman v. Sears, Roebuck & Co., 952 F.2d 128, 137 n. 23 (5th Cir.), cert. denied, 506 U.S. 845, 113 S.Ct. 136, 121 L.Ed.2d 89 (1992); Albertson v. T.J. Stevenson & Co., 749 F.2d 223, 228 (5th Cir.1984)); see. Copeland v. Wasserstein, Perella & Co., 278 F.3d 472, 482 n. 21 (5th Cir.2002); Doe v. Dallas Indep. Sch,. Dist., 220 F.3d 380, 386 (5th Cir.2000), cert. denied, 531 U.S. 1073, 121 S.Ct. 766, 148 L.Ed.2d 667 (2001); Crowe v. Henry, 115 F.3d 294, 298 n. 4 (5th Cir.1997). "A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [her] earlier deposition testimony." Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir.1986) (citing Biechele v. Cedar Point, Inc., 747 F.2d 209, 215 (6th Cir.1984)); accord Doe, 220 F.3d at 386.
"Although the court must resolve all factual inferences in favor of the nonmovant, the nonmovant cannot manufacture a disputed material fact where none exists." Albertson, 749 F.2d at 228. "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting [her] own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Doe, 220 F.3d at 386; see Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) (recognizing that lower courts "have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity") (citations omitted). Therefore, to the extent that Price's affidavits dated January 20, 2006, and February 3, 2006, are inexplicably inconsistent with her deposition testimony from February 10, 2004; the court cannot consider them.
*679 C. Timeliness of Plaintiffs Response to Defendant's Motion for Summary Judgment
In its reply, Defendant raises the issue of Plaintiff's failure to file her response to the County's motion for summary judgment in a timely manner. Defendant argues that Plaintiffs response, docketed on January 21, 2006, was one day late. In her sur-reply, Price explains that Plaintiffs counsel encountered technical difficulties in attempting to file her response electronically on January 20, 2006, and attached a copy of the error message that was generated. Pursuant to Local Rule CV-5(a)(10), "A technical failure does not relieve a party of exercising due diligence to timely file and serve documents . . . A Filing User whose filing is made untimely as the, result of a technical failure not attributable to the court may seek appropriate relief from the court." In light of the fact that Plaintiffs inability to submit her response in a timely manner was based on a technical failure and that she filed her response within one day of receiving the error message, the court views Price's response to the County's motion for summary judgment as timely.
D. Section 1983
Price claims that the County discriminated against her on the basis of her race and retaliated against her in violation of 42 U.S.C. § 1983. The Civil Rights Act of 1871, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law. See Inyo County v. Paiute-Shoshone Indians of the Bishop Cmty., 538 U.S. 701, 708, 123 S.Ct. 1887, 155 L.Ed.2d 933 (2003); Conn v. Gabbert, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399:(1999); Livadas v. Bradshaw, 512 U.S. 107, 132, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994); Ballard v. Wall, 413 F.3d 510, 518 (5th Cir.2005). It provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
42 U.S.C. § 1983. "Section 1983 `is not itself a source of substantive rights,' but merely provides `a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)); accord Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); City of Oklahoma City v. Tuttle, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs., 380 F.3d 872, 879-80 (5th Cir.2004); Felton v. Polles, 315 F.3d 470, 479 (5th Cir.2002); Jackson v. City of Atlanta, 73 F.3d 60, 63 (5th Cir.), cert. denied, 519 U.S. 818, 117. S.Ct. 70, 136 L.Ed.2d 30 (1996).
There are three elements to establish liability in a § 1983 action. See Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir.2004) (citing Bush v. Viterna, 795 F.2d 1203, 1209 (5th Cir.1986)). To prevail, the plaintiff must show "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." Id.; see American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999); Blessing v. Freestone, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 *680 L.Ed.2d 569 (1997); Daniels v. Williams, 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Priester v. Lowndes County, 354 F.3d 414, 420 (5th Cir.), cert. denied, 543 U.S. 829, 125 S.Ct. 153, 160 L.Ed.2d 44 (2004). A § 1983 complainant must support her claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. See id.; Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir.1995).
Thus, for Price to recover under § 1983, she must show that Defendant deprived her of a right guaranteed by the Constitution or the laws of the United States. See Daniels, 474 U.S. at 329-31, 106 S.Ct. 662; Baker, 443 U.S. at 139, 99 S.Ct. 2689; Hernandez, 380 F.3d at 879-80; Victoria W, 369 F.3d at 482; Rosborough v. Management & Training Corp., 350 F.3d 459, 460 (5th Cir.2003). "[T]he first step in a § 1983 analysis is to identify the specific constitutional right involved." Oliver v. Scott, 276 F.3d 736, 744 n. 10 (5th Cir.2002) (citing Baker, 443 U.S. at 140, 99 S.Ct. 2689). "`Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.'" Victoria W, 369 F.3d at 482 (quoting Baker, 443 U.S. at 146, 99 S.Ct. 2689); accord Town of Castle Rock v. Gonzales, 545 U.S. 748, 769 n. 15, 125 S.Ct. 2796, 2810 n. 15, 162 L.Ed.2d 658 (2005); see also Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 450 (5th Cir.), cert. denied, 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994). To prevail, Price must prove that she was subject to intentional discrimination. See, e.g., Washington v. Davis, 426 U.S. 229, 238-42, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir.1997); Wallace, 80 F.3d at 1047. The negligent deprivation of life, liberty, or property is not a constitutional violation. See McClendon v. City of Columbia, 305 F.3d 314, 326 (5th Cir. 2002), cert. denied, 537 U.S. 1232, 123 S.Ct. 1355, 155 L.Ed.2d 196 (2003); Campbell v. City of San Antonio, 43 F.3d 973, 977 (5th Cir.1995); Fraire v. City of Arlington, 957 F.2d 1268, 1276 (5th Cir.), cert. denied, 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992). Moreover, to hold the County liable under the statute, Price must adduce facts demonstrating Defendant's participation in the alleged wrong. A § 1983 plaintiff must not only establish a violation of one of her constitutional rights but "`a direct causal connection . . . between the [County] policy and the alleged constitutional violation.'" Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force, 379 F.3d 293, 310 (5th Cir.2004) (quoting Fraire, 957 F.2d at 1281); see Piotrowski v. City of Houston,. 237 F.3d 567, 580 (5th Cir.), cert. denied, 534 U.S. 820, 122 S.Ct. 53, 151 L.Ed.2d 23 (2001).

1. Statute of Limitations

Because there is no specific federal statute of limitations governing claims brought under 42 U.S.C. § 1983, federal courts look to the law of the state in which the action arose to determine the appropriate limitations period, usually borrowing the state's general personal injury statute of limitations. See Hardin v. Straub, 490 U.S. 536, 538, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989); Owens v. Okure, 488 U.S. 235, 236, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); Wilson v. Garcia, 471 U.S. 261, 269, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); Price v. City of San Antonio, 431 F.3d 890, 892 (5th Cir.2005); Piotrowski, 237 F.3d at 576; Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 518 (5th Cir.1998); Flores v. Cameron County, 92 F.3d 258, 271 (5th Cir.1996). It is undisputed that the events giving rise to .the case at bar occurred in Texas. In Texas, "the applicable statute provides that claims must be brought `not later than *681 two years after the day the cause of action accrues.'" Price, 431 F.3d at 892 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon 2005)); see Hitt v. Connell, 301 F.3d 240, 246 (5th Cir.2002); Piotrowski, 237 F.3d at 576; Burns, 139 F.3d at 518; Jackson v. Johnson, 950 F.2d 263, 265 (5th Cir.1992). Texas intermediate appellate courts have uniformly held that "a complaint filed the day after the same calendar day two years after the action accrued is one day too late." Price, 431 F.3d at 893 (emphasis in original) (citing Medina v. Lopez-Roman, 49 S.W.3d 393, 397-98 (Tex.App.-Austin 2000, pet. denied); Fisher v. Westmont Hospitality, 935 S.W.2d 222, 224 (Tex.App.-Houston [14th Dist.] 1996, no writ)). Because § 1983 claims are most analogous to Texas personal injury claims, the applicable statute of limitations is two years, as set forth in § 16.003 of the Texas Civil Practice and Remedies Code. See Price, 431 F.3d at 893; Piotrowski, 237 F.3d at 576; Gonzales v. Wyatt, 157 F.3d 1016, 1020 (5th Cir.1998); Burns, 139 F.3d at 518; Flores, 92 F.3d at 271; Jackson, 950 F.2d at 265. Thus, Price was required to bring her claim "no later than the same calendar day two years following the accrual of [her] cause of action." Price, 431 F.3d at 893; see Piotrowski, 237 F.3d at 576.
While state law determines the limitations period, federal law determines when a cause of action accrues. See Hitt, 301 F.3d at 246 (5th Cir.2002); Piotrowski, 237 F.3d at 576; Burns, 139 F.3d at 518; Jackson, 950 F.2d at 265; Brummett v. Gamble, 946 F.2d 1178, 1184 (5th Cir.1991), cert. denied, 504 U.S. 965, 112 S.Ct. 2323, 119 L.Ed.2d 241 (1992). "Under federal law; a cause of action accrues `when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" Burns, 139 F.3d at 518 (quoting Burrell v. Newsome, 883 F.2d 416, 418 (5th Cir.1989)); accord Charleston v. Boone, 156 Fed.Appx. 672, 672 (5th Cir.2005); Price, 431 F.3d at 893; Hitt, 301 F.3d at 246; Piotrowski, 237 F.3d at 576; Gonzales, 157 F.3d at 1020. "A plaintiffs awareness encompasses two elements: (1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." Piotrowski, 237 F.3d at 576. Nevertheless, "[a] plaintiff need not know that she has a legal cause of action; she need know only the facts that would ultimately support a claim, Actual knowledge is not required `if the circumstances would lead a reasonable person to investigate further.'" Id. (citations omitted). In the instant action, Price knew or should have known of her purported injury at the very latest on November 8, 2002, the day the County terminated her employment. Thus, the statute of limitations for her § 1983 claim began to run on November 8, 2002. Price, however, did not assert her § 1983 claim until April 5, 2005, when she amended her original petition to add this cause of action. Because Plaintiff did not assert her § 1983 claim until over two years after she was terminated, the relation back doctrine must apply in order for her § 1983 claim to be considered timely.

a. Relation Back Doctrine

In the instant action, Price may avail herself of the "relation back" provision of Rule 15(c) of the Federal Rules of Civil Procedure. See Mayle v. Felix, 545 U.S. 644, 647-50, 125 S.Ct. 2562, 2566, 162 L.Ed.2d 582 (2005); Waltman v. International Paper Co., 875 F.2d 468, 474 (5th Cir.1989). Price's § 1983 claim, asserted for the first time in her amended petition, may be considered timely only if she can show that it relates back to the date the original petition was filed. See Hennelly v. Greenwood Cent. Sch. Dist., No. 02-C6398P, 2004 WL 1570277, at *3 (W.D.N.Y. *682 June 29, 2004). In cases where a complaint is amended to include a claim after the applicable limitation period has expired, Rule 15(c) of the Federal Rules of Civil Procedure provides for relation back to the date of the original complaint if the amendment satisfies certain requirements. See Hennelly, 2004 WL 1570277, at * 3; In re Enron Corp. Secs., Derivative & "ERISA" Litig., 310 F.Supp.2d 819, 849 (S.D.Tex.2004). Rule 15(c), as amended in 1991 and 1993, provides for relation back under the following circumstances:
(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.
Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir.1998) (quoting FED.R.Crv.P. 15(c)) (emphasis omitted); see FDIC v. Conner, 20 F.3d 1376, 1385 (5th Cir.1994); In re Enron Corp. Secs., Derivative & "ERISA" Litig., 310 F.Supp.2d at 849-50.
In this case, Price's § 1983 claim asserted against the County in her amended petition clearly arose out of the "`conduct, transaction, or occurrence'" set forth in her original petition. Mayle, 545 U.S. at 648-49, 125 S.Ct. at 2566 (quoting FED. R.Civ.P. 15(c)(2)); see Jacobsen, 133 F.3d at 320. On July 21, 2003, Price filed suit alleging race discrimination and retaliation by the County in violation of the TCHRA. On April 5, 2005, Price amended her petition to include a cause of action under § 1983 for violation of her constitutional rights as a result of race-based discrimination and retaliation. In asserting both the TCHRA and § 1983 claims, Plaintiff relies upon her reassignment and termination as evidence of the County's allegedly unlawful race-based discrimination and retaliation. Price asserts that she was transferred from a clerical position to a field position and subsequently terminated from her employment with the County because of her race. Moreover, in both the original petition's and amended petition's statement of facts, Plaintiff claims: (1) her salary was improperly frozen; (2) she was denied two promotional opportunities based on her race; and (3) her termination was racially motivated and retaliatory. Price alleges that these wrongful acts occurred during her employment with the County from 1989 to 2002, with her reassignments taking place in 1993 and 1998-1999 and her termination occurring on November 8, 2002.
Because both causes of action are based upon the same nucleus of operative facts and contain similar allegations of discrimination, Price's § 1983 claims in the amend ed petition relate back to the filing date of the original petition, dated July 21, 2003. In light of the fact that Price was terminated less than two years before the filing date of the original petition, her § 1983 claims are not time-barred.

b. Continuing Violation Theory

In the case at bar, Price argues that the continuing violation theory applies *683 and that actions occurring outside the relevant statutory period may be included in this court's analysis. Specifically, "a persisting and continuing system of discriminatory practices in promotion or transfer produces effects that may not manifest themselves as individually discriminatory, except in cumulation over a period of time." Glass v. Petro-Tex Chem. Corp., 757 F.2d 1554, 1561 (5th Cir.1985) (citing Trevino v. Celanese Corp., 701 F.2d 397, 402 (5th Cir.1983)). Accordingly, "[t]he continuing violation theory can relieve a plaintiff of showing that all of the defendant's conduct occurred within the prescription period, but only if the plaintiff can show `a series of related acts, one or more of which falls within the limitations period.'" Montgomery v. Louisiana ex rel. La. Dep't of Pub. Safety & Cons., No. 01-31458, 2002 WL 1973820, at *2 (5th Cir. Aug.2, 2002) (quoting Messer v. Meno, 130 F.3d 130, 134-135 (5th Cir.1997), cert. denied, 525 U.S. 1067, 119 S.Ct. 794, 142 L.Ed.2d 657 (1999)).
"The doctrine `"requires the same type of discriminatory acts to occur both inside and outside the limitations period," such that a valid connection exists between them.'" Felton, 315 F.3d at 485 (emphasis in original) (quoting Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 352 (5th Cir.2001) (quoting Estate of Martineau v. ARCO Chem. Co., 203 F.3d 904, 913 (5th Cir.2000))). "Although there is no definitive standard for what constitutes a continuing violation, the plaintiff must demonstrate more than a series of discriminatory acts. [She] must show an organized scheme leading to and including a present violation." Huckabay v. Moore, 142 F.3d 233, 239 (5th Cir.1998); see Celestine, 266 F.3d at 352; Berry v. Board of Supervisors, 715 F.2d 971, 981 (5th Cir. 1983), cert. denied, 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986). "[I]t is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." Huckabay, 142 F.3d at 239; see National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 118, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); Messer, 130 F.3d at 135; Glass, 757 F.2d at 1561. "The end goal of the continuing violation theory is to `accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period" and then "`all of the discriminated acts committed as part of this pattern or policy can be considered timely.'" Pegram v. Honeywell, Inc., 361 F.3d 272, 279 (5th Cir.2004) (quoting Celestine, 266 F.3d at 352); see also Yerby v. University of Houston, 230 F.Supp.2d 753, 761-62 (S.D.Tex.2002).
Application of this theory relieves a plaintiff from the burden of proving that the entire violation occurred within the limitations period, as long as she can show that at least one of the alleged discriminatory acts arose within the statute of limitations. See Morgan, 536 U.S. at 117, 122 S.Ct. 2061; Pegram, 361 F.3d at 279; Huckabay, 142 F.3d at 238 (citing Messer, 130 F.3d at 135); Webb v. Cardiothoracic Surgery Assocs., 139 F.3d 532, 537 (5th Cir.1998). The purpose behind allowing a plaintiff to maintain a cause of action under the continuing violation theory is to permit redress for acts the discriminatory character of which was not apparent at the time they occurred. See Speer v. Rand McNally & Co., 123 F.3d 658, 663-64 (7th Cir.1997); accord Sweeney v. West, 149 F.3d 550, 556 (7th Cir.1998). A continuing violation tolls the statute of limitations because such statutes are meant only to prevent stale claims. See McGregor v. Louisiana State Univ. Bd. of Supervisors, 3 F.3d 850, 867 (5th Cir.1993), cert. denied, *684 510 U.S. 1131, 114 S.Ct. 1103, 127 L.Ed.2d 415 (1994) (citing Havens Realty Corp. v. Coleman, 455 U.S. 363, 380, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)). "`Where the challenged violation is a continuing one, the staleness concern disappears.'" Id.
The Fifth Circuit has adopted a multi-factor test to assess whether a continuing violation is implicated. See Celestine, 266 F.3d at 351; Huckabay, 142 F.3d at 239; Berry, 715 F.2d at 981. These factors include subject matter, frequency, and permanence:
This inquiry, of necessity, turns on the facts and context of each particular case. Relevant to the determination are the following three factors, which we discuss, but by no means consider to be exhaustive. The first is subject matter. Do the alleged facts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring . . . or more, in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence which should trigger an employee's awareness and duty to assert his or her, rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?
Id.; see Celestine, 266 F.3d at 351; Huckabay, 142 F.3d at 239; see also Morgan, 536 U.S. at 107 n. 3, 122 S.Ct. 2061. "Importantly, however, the particular context of individual employment situations requires a fact-specific inquiry that cannot easily be reduced to a formula." Huckabay, 142 F.3d at 239 (citing Berry, 715 F.2d at 981).
"`The core idea [of the continuing violation theory] is that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated.'" Webb, 139 F.3d at 537 (quoting Glass, 757 F.2d at 1560-61). "`The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights.'" Id. (quoting Glass, 757 F.2d at 1561 (citations omitted)); see also Messer, 130 F.3d at 135; Abrams v. Baylor Coll. of Med., 805 F.2d 528, 534 (5th Cir.1986). Nonetheless, the Fifth Circuit has cautioned that "[t]his theory of continuing violation has to be guardedly employed because within it are the seeds of destruction of statutes of limitation. . . ." Id. at 533.
Because Price's § 1983 claims relate back to her original petition, dated July 21, 2003, and the applicable statute of limitations is two years, all purportedly wrongful acts occurring before July 21, 2001, are time-barred unless the continuing violation theory applies. See Jackson v. Galan, 868 F.2d 165, 168 (5th Cir.1989); Perez v. Laredo Junior Coll., 706 F.2d 731, 733-34 (5th Cir.1983), cert. denied, 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984); see also McGregor, 3 F.3d at 866 n. 27. The continuing violation theory extends the limitations period on otherwise time-barred claims, however, only when the unlawful employment practice manifests itself over time, rather than through a series of discrete acts. See Pegram, 361 F.3d at 279 (citing Frank v. Xerox Corp., 347 F.3d 130, 136 (5th Cir.2003)); see also Huckabay, 142 F.3d at 238-39. In the instant action, the continuing violation theory does not apply to Plaintiff's allegedly discriminatory reassignments in 1993 and 1998-99 because these events constitute discrete acts, which are separately, actionable, and may not be pursued outside the *685 relevant limitations period. See Peanick v. Morris, 96 F.3d 316, 322 (8th Cir.1996); Bowers v. Edgewood Indep. Sch. Dist., No. Civ. A. SA05CA404XR, 2005 WL 2648332, at *6 (W.D.Tex. Oct.4, 2005); Victor v. Runyon, No. Civ. A. 96-5711, 1997 WL 461562, at *1 n. 2 (E.D.Pa. July 31, 1997), aff'd, 151 F.3d 1027 (3d Cir.1998); see also Huckabay, 142 F.3d at 240; Stephens v. Mississippi Univ. for Women, No. Civ. A. 1:04CV226, 2005 WL 3591812, at *2 (N.D.Miss. Dec.30, 2005) (citing Morgan, 536 U.S. at 114, 122 S.Ct. 2061); Brown v. Farmers Ins. Exch., No. Civ. A. SA02CA1032-XR, 2004 WL 952396, at *3 (W.D.Tex. May 3, 2004).
Moreover, while discriminatory paychecks involve repeated conduct, decisions affecting salary are considered discrete acts to which the continuing violation theory does not apply. See Forsyth v. Federation Employment & Guidance Serv., 409 F.3d 565, 572-73 (2d Cir.2005); Pollis v. New Sch. for Soc. Research, 132 F.3d 115, 118-19 (2d Cir.1997); Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907* (2d Cir.1997), cert. denied, 528 U.S. 817, 120 S.Ct. 56, 145 L.Ed.2d 49 (1999). As the Supreme Court explained in Bazemore v. Friday, "each week's paycheck that delivers less to [an African-American] than to a similarly situated [non-African-American] is a wrong actionable . . . regardless of the fact that this pattern was begun prior to" the applicable limitations period. 478 U.S. 385, 395-96, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986); accord Morgan, 536 U.S. at 111-12, 122 S.Ct. 2061; Forsyth, 409 F.3d at 572-73; Anderson v. Zubieta, 180 F.3d 329, 335 (D.C.Cir.1999); Pollis, 132 F.3d at 119; see Meckenberg v. New York City Off-Track Betting, 42 F.Supp.2d 359, 371 (S.D.N.Y.1999) ("recurring pay discrimination does not constitute a continuing violation, as each receipt of a paycheck is the basis for a separate cause of action for which suit must be brought within the limitations period"). Accordingly, such payments constitute a number of "discrete, individual wrongs rather than a single and indivisible course of wrongful action." Pollis, 132 F.3d at 119. Therefore, any discriminatory paycheck received by Price during the statute of limitations period is actionable, constituting a potential violation for which Plaintiff may recover damages. See Forsyth, 409 F.3d at 573 (citing Pollis, 132 F.3d at 119); see also Meckenberg, 42 F.Supp.2d at 371. Price's allegation regarding salary discrimination is, thus, confined to those paychecks she received within the relevant statute of limitations period from July 21, 2001, to July 21, 2003. See id.; Reese v. Ice Cream Specialties, Inc., 347 F.3d 1007, 1013 (7th Cir.2003).
In this situation, in the absence of a continuing violation, Plaintiff is limited to relying upon allegations of racially discriminatory acts occurring between July 21, 2001, and July 21, 2003. Such acts include: (1) the written reprimand from Layne dated August 2, 2001; (2) the hiring of Whittaker as office manager on May 28, 2002; (3) Plaintiffs three-day suspension and written warning for, the alleged incident with Whittaker in August 2002; (4) Plaintiff's final written warning given September 9, 2002, regarding excessive personal telephone calls, chronic absenteeism, and implementation of a twenty-four hour notice requirement prior to taking time off; (5) the thirty-day probationary period beginning September 9, 2002; (6) the hiring of Newsome as office manager in October 2002; and (7) Plaintiffs November 8, 2002, termination. All other allegations of discriminatory conduct occurring outside the relevant limitations period of July 21, 2001, to July 21, 2003, to which the continuing violation theory does not apply, are time-barred.

*686 2. Equal Protection Claims

a. Discrimination Based on Race

Price asserts that the County treated her differently than employees who were not African-American, thereby denying her equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution. Price had a clearly established right to be free from racial discrimination in employment. See Smith v. Lomax, 45 F.3d 402, 407 (11th Cir.1995); Martinez v. Val Verde County Hosp. Dist., 46 F.3d 66, 66 (5th Cir.1995); Yeldell v. Cooper Green Hosp., Inc., 956 F.2d 1056, 1064 (11th Cir.1992); Wong-Opasum v. Middle Tenn. State Univ., No. 3:04-0719, 2006 WL 208881, at *3 (M.D.Tenn. Jan.24, 2006); Leadbetter v. Gilley, No. 3:00-CV-661, 2001 WL 34079307, at *7 (E.D.Tenn. Aug.31, 2001); Vidmar v. City of Chicago Bd. of Educ., No. 98-C-0951, 1999 WL 409929, at *4-5 (N.D.Ill. June 7, 1999); Smith v. Alabama, 996 F.Supp. 1203, 1212 (M.D.Ala.1998); Eldridge v. Morrison, 970 F.Supp. 928, 942 (M.D.Ala.1996), aff'd, 120 F.3d 275 (11th Cir.1997). The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Artway v. Attorney Gen. of N.J., 81 F.3d 1235, 1267 (3d Cir.1996) (emphasis in original) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)); accord Plyler v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); Priester, 354 F.3d at 424; Beeler v. Rounsavall, 328 F.3d 813, 816 (5th Cir.), cert. denied, 540 U.S. 1048, 124 S.Ct. 820, 157 L.Ed.2d 697 (2003); Bryan v. City of Madison, 213 F.3d 267, 276 (5th Cir.2000), cert. denied, 531 U.S. 1145, 121 S.Ct. 1081, 148 L.Ed.2d 957 (2001); Mayabb v. Johnson, 168 F.3d 863, 870 (5th Cir.), cert. denied, 528 U.S. 969, 120 S.Ct. 409, 145 L.Ed.2d 319 (1999); Stefanoff v. Hays County, 154 F.3d 523, 525-26 (5th Cir.1998). "`[W]henever the government treats any person unequally because of his or her race, that person has suffered an injury that falls squarely within the language and spirit of the Constitution's guarantee of equal protection.'" Grutter v. Bollinger, 539 U.S. 306, 327, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003) (quoting Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 229-30, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995)). Claims alleging racial discrimination in violation of the. Equal Protection Clause are actionable under § 1983. See Police Ass'n of New Orleans v. City of New Orleans, 100 F.3d 1159, 1170 (5th Cir.1996); see also Priester, 354 F.3d at 424.
"`A violation of the equal protection clause occurs only when, inter alia, the governmental action in question classifies between two or more relevant persons or groups.'" Johnson v. Rodriguez, 110 F.3d 299, 309 (5th Cir.), cert. denied, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997) (quoting Vera v. Tue, 73 F.3d 604, 609-10 (5th Cir.1996)); see Edwards v. Johnson, 209 F.3d 772, 780 (5th Cir.2000); Mayabb, 168 F.3d at 870; accord Woodard v. Andrus, 419 F.3d 348, 354 (5th Cir.2005) (citing Rolf v. City of San Antonio, 77 F.3d 823, 828 (5th Cir.1996)). "To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff `must allege and prove that [she] received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'" Priester, 354 F.3d at 424 (quoting Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001)); see Freeman v. Texas Dep't of *687 Criminal Justice, 369 F.3d 854, 862 (5th Cir.2004). "A discriminatory purpose `implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group.'," Priester, 354 F.3d at 424 (quoting Taylor, 257 F.3d at 473); accord Edwards, 209 F.3d at 780.
In the present case, Price claims that the County treated her differently than other similarly situated employees who were not African-American by reprimanding her, suspending her, placing her on probation, denying her a promotion to the position of office manager, and terminating her employment. The County, however, has cited numerous factors that distinguish Price's conduct and performance from that of other members of the Engineering Department's clerical staff. While employed by the County, Price received counseling and reprimands for her excessive absenteeism and personal telephone use as well as problems with filing system management. Moreover, Plaintiff was involved in an incident with her super visor in which she admittedly asked whether she had to "kiss her [supervisor's] butt" to obtain her paycheck. Price, on the other hand, offers no admissible evidence that other employees had a comparable history of misconduct or performance problems, and she provides no admissible evidence showing that her record of unprofessional behavior, as documented by the County, is incorrect. Under these circumstances, Price's unique history of improper conduct and performance problems constitutes a permissible basis for any alleged difference in treatment, irrespective of her race.
Plaintiff also alleges that the County treated her differently than other similarly situated employees who were not African-American by freezing her salary. At deposition, however, Price admitted that she received a raise after being reassigned to the secretarial position in the Engineering Department, and thereafter, she was at the top of the pay scale.
Q: And after you received that raise upon being transferred  or reassigned back to a secretarial position, weren't you, in fact, at the top of your pay scale?
A: Yes.
Equally detrimental to Plaintiffs argument is her inability to direct this court's attention to any other member of the Engineering Department's clerical staff with like experience who held a comparable position for a similar length of time yet continued to receive increases in salary after having reached the top of the pay scale. Therefore, because Plaintiff has failed, to show that she was unfairly classified or treated differently than other similarly situated employees, her equal protection claim must be rejected.

b. Retaliation

Although claims of retaliation are commonly brought under the First Amendment and may also be brought under Title VII, retaliation claims growing out of complaints of employment discrimination have not been recognized under the equal protection clause of the Fourteenth Amendment. See, e.g., R.S.W.W., Inc. v. City of Keego Harbor, 397 F.3d 427, 440 (6th Cir.2005); Boyd v. Illinois State Police, 384 F.3d 888, 898 (7th Cir.2004); Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir.1996); Ratliff v. DeKalb County, 62 F.3d 338, 340-41 (11th Cir.1995); Gray v. Lacke, 885 F.2d 399, 414 (7th Cir.1989), cert. denied, 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990); Yatvin v. Madison Metro. Sch, Dist., 840 F.2d 412, 418-19 (7th Cir.1988); Tafoya v. Adams, 816 F.2d 555, 558 (10th Cir.), cert. denied, 484 U.S. *688 851, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987); Tinoco v. Raleeh, No. 4:05-CV-367, 2006 WL 27287, at *2 (E.D.Tex. Jan.5, 2006); Gates 15. City of Dallas, No. Civ. A. 3:96-CV-2198D, 1998 WL 401602, at *4-5 (N.D.Tex. July 15, 1998). As the Eleventh Circuit has noted, "no clearly established right exists under the equal protection clause to be free from retaliation." Ratliff 62 F.3d at 340 (emphasis in original); see R.S.W.W., Inc., 397 F.3d at 440; Boyd, 384 F.3d at 898. Thus, Price's retaliation claim is not actionable under § 1983 via the Fourteenth Amendment.

3. Governmental Liability under Section 1983

Assuming arguendo that Price were able to establish the County discriminated and retaliated against her on the basis of race in violation of the equal protection clause, in order to recover against a governmental entity under § 1983, Price must demonstrate the deprivation of the constitutional right took place pursuant to an official policy or custom. See Shields, 389 F.3d at 151; Burge v. St. Tammany Parish, 336 F.3d 363, 369 (5th Cir.2003), cert. denied, 540 U.S. 1108, 124 S.Ct. 1074, 157 L.Ed.2d 895 (2004); Flores, 92 F.3d at 263; Campbell, 43 F.3d at 977. For § 1983 liability to attach, a plaintiff must demonstrate three elements: "`a policy-maker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.'" Cox v. City of Dallas, 430 F.3d 734, 748 (5th Cir.2005) (quoting Piotrowski, 237 F.3d at 578); accord Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 247 (5th Cir.2003). "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur." Piotrowski, 237 F.3d at 578 (citing Snyder v. Trepagnier, 142 F.3d 791, 796 (5th Cir.1998), cert. granted, 525 U.S. 1098, 119 S.Ct. 863, 142 L.Ed.2d 716, cert. dismissed, 526 U.S. 1083, 119 S.Ct. 1493, 143 L.Ed.2d 575 (1999)); accord Rivera, 349 F.3d at 247. Moreover, when proceeding under § 1983, "each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff . . ." Piotrowski, 237 F.3d at 579. Therefore, to prevail under § 1983, Price must point to more than isolated unconstitutional actions of a County employee; instead, she "must identify a policymaker with final policymaking authority and a policy that is the `moving force' behind the alleged constitutional violation." Rivera, 349 F.3d at 247 (quoting Piotrowski, 237 F.3d at 578).
Proof of a responsible policymaker is a necessary element for the imposition of governmental liability under § 1983. See Piotrowski, 237 F.3d at 579 (citing Jett v. Dallas Indep, Sch. Dist., 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); City of St. Louis v. Praprotnik, 485 U.S. 112, 126, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); Pembaur v. City of Cincinnati, 475 U.S. 469, 482-83, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)); see also Johnson, 379 F.3d at 309. State law determines whether a particular individual is a final policymaker of a governmental entity with respect to a certain sphere of activity. See Bennett v. Pippin, 74 F.3d 578, 586 (5th Cir.), cert. denied, 519 U.S. 817, 117 S.Ct. 68, 136 L.Ed.2d 29 (1996) (citing Jett, 491 U.S. at 737, 109 S.Ct. 2702; Praprotnik, 485 U.S, at 124, 108 S.Ct. 915; Doe v. Rains County Indep. Sch. Dist., 66 F.3d 1402, 1407 (5th Cir.1995)); see also Gros v. City of Grand Prairie, 181 F.3d 613, 616 (5th Cir.1999); Hill v. Silsbee Indep. Sch. Dist., 933 F.Supp. 616, 622 (E.D.Tex.1996). In the case at bar, Price alleges that the County's Engineering Department took the purportedly discriminatory employment actions against her through its acting County Engineers. *689 Plaintiff, however, fails to provide the court with any evidentiary support or legal authority establishing the County Engineer as the final policymaker responsible for the employment decisions at issue in the instant action. See Wallace v. County of Comal, No. SA-01-CA-445-RF, 2004 WL 1124942, at *1 (W.D.Tex. Feb.10, 2004) (finding that county engineer was not a policymaker who could subject Comal County to liability). Because Plaintiff has not demonstrated that the acting County Engineers were the officials to whom the County delegated this sphere of policymaking authority, Price has failed to establish the existence of this element necessary for the imposition of municipal liability under § 1983. See Bowles v. Cheek, 44 Fed.Appx. 651, 651 (5th Cir.2002) (citing Piotrowski, 237 F.3d at 579).
Proof of an official policy or custom is also required. The United States Supreme Court has expressly held that local government entities may be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Department of Soc. Servs., 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); see Collins v. City of Harker Heights, 503 U.S. 115, 120-21, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); Keenan v. Tejeda, 290 F.3d 252, 262 (5th Cir. 2002); Languirand v. Hayden, 717 F.2d 220, 223 (5th Cir.1983), cert. denied, 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984). A municipality may also be sued "for constitutional deprivations visited pursuant to governmental `custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-91, 98 S.Ct. 2018; accord Languirand, 717 F.2d at 223. The Fifth Circuit has defined official policy or custom as:
1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.
Johnson v. Moore, 958 F.2d 92, 94 (5th Cir.1992) (quoting Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir.1984), cert. denied, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985)); accord Cox, 430 F.3d at 748-49; Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir.2002), cert. denied, 537 U.S. 1110, 123 S.Ct. 892, 154 L.Ed.2d 782 (2003); Brown v. Bryan County, 219 F.3d 450, 457 (5th Cir.2000), cert. denied, 532 U.S. 1007, 121 S.Ct. 1734, 149 L.Ed.2d 658 (2001); Eugene v. Alief Indep. Seh. Dist., 65 F.3d 1299, 1304 (5th Cir.1995), cert. denied, 517 U.S. 1191, 116 S.Ct. 1680, 134 L.Ed.2d 782 (1996).
The first type of "policy" is characterized by formal rules and understandings which constitute fixed plans of action to be followed under similar circumstances consistently and over time. See Pembaur, 475 U.S. at 480-81, 106 S.Ct. 1292; accord Gonzalez v. Ysleta Indep. Sch,. Dist., 996 F.2d 745, 754 (5th Cir.1993). The second type of "policy" arises from custom, i.e., "conduct that has become a *690 traditional way of carrying out policy and has acquired the force of law." Bennett v. City of Slidell 728 F.2d 762, 768 (5th Cir.1984). A third type of "policy" stems from "a final decisionmaker's adoption of a course of action `tailored to a particular situation and not intended to control decisions in later situations'. . . ." Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 406, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (quoting Pembaur, 475 U.S. at 481, 106 S.Ct. 1292); accord In re Foust, 310 F.3d 849, 862 (5th Cir.2002). "[A] single decision by a policy maker may, under certain circumstances, constitute a policy for which the County may be liable." Bryan County, 219 F.3d at 462; accord Gelin v. Housing Auth. of New Orleans, 456 F.3d 525, 527 (5th Cir.2006); Woodard, 419 F.3d at 352. Under this type of "policy," a municipality can be liable only if the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers. See Bryan County, 219 F.3d at 462; accord Woodard, 419 F.3d at 352. Such "authorized decisionmakers" are defined to be officials "`whose edicts or acts may fairly be said to represent official policy" and whose decisions may therefore result in municipal liability under § 1983. Bryan County, 219 F.3d at 457 n. 9 (quoting Monell, 436 U.S. at 694, 98 S.Ct. 2018); accord Woodard, 419 F.3d at 352; Tharling v. City of Port Lavaca, 329 F.3d 422, 427 (5th Cir.2003); Pineda, 291 F.3d at 328. Furthermore, the Fifth Circuit has held that when a final policymaker makes a decision, and that decision is within the sphere of the policymaker's final authority, "`the existence of a well-established, officially-adopted policy will not insulate the municipality from liability.'" Pippin, 74 F.3d at 586 (quoting Gonzalez, 996 F.2d at 754).
"`Actual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority.'" Piotrowski, 237 F.3d at 579 (quoting Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir.1984)); see Cox, 430 F.3d at 749 n. 53; Johnson, 379 F.3d at 309; Rivera, 349 F.3d at 249. "If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." Webster, 735 F.2d at 842; accord Bennett, 728 F.2d at 768.
In any event, a governmental entity may not be held liable for the acts of its employees under a theory of respondeat superior. See Monell, 436 U.S. at 694, 98 S.Ct. 2018; Estate of Davis v. City of N. Richland Hills, 406 F.3d 375, 384 n. 45 (5th Cir.2005); Pineda, 291 F.3d at 328; Piotrowski, 237 F.3d at 578; Flores, 92 F.3d at 263; Colle v. Brazos County, 981 F.2d 237, 244 (5th Cir.1993); Williams v. Luna, 909 F.2d 121, 123 (5th Cir.1990). "Municipalities are not vicariously liable for the actions of their employees under § 1983. Municipal liability inures only when the execution of a local government's policy or custom causes the injury." Baker v. Putnal, 75 F.3d 190, 200 (5th Cir. 1996); see Victoria W., 369 F.3d at 482; Williams v. Kaufman County, 352 F.3d 994, 1014 (5th Cir.2003). In order to hold a governmental entity liable for the acts of a nonpolicymaking employee, the plaintiff must allege and prove, that: "(1) a policy or custom existed; (2) the governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or *691 policy served as the moving force behind the violation." Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d 521, 532-33 (5th Cir.1996) (citing Palmer v. City of San Antonio, 810 F.2d 514, 516 (5th Cir. 1987)); accord Rivera, 349 F.3d at 247; Pineda, 291 F.3d at 328; Piotrowski, 237 F.3d at 579. "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Board of County Comm'rs of Bryan County, 520 U.S. at 405, 117 S.Ct. 1382 (citing City of Canton v. Harris, 489 U.S. 378, 391-92, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). "These requirements must not be diluted, for `[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.'" Snyder, 142 F.3d at 796 (quoting Board of County Comm'rs of Bryan County, 520 U.S. at 415, 117 S.Ct. 1382); accord Piotrowski, 237 F.3d at 580.
Consistent with the commonly understood meaning of custom, proof of random acts or isolated incidents is not sufficient to show the existence of a custom or policy. See McClendon v. City of Columbia, 258 F.3d 432, 441-42 (5th Cir.2001) (reinstated in part by McClendon, 305 F.3d at 321 n. 3); Fraire, 957 F.2d at 1278 (citing Rodriguez v. Avita, 871 F.2d 552, 554 (5th Cir.), cert. denied, 493 U.S. 854, 110 S.Ct. 156, 107 L.Ed.2d 114 (1989)); Gardner v. Hill, 195 F.Supp.2d 832, 837 (E.D.Tex.2001); accord Thompson v. City of Los Angeles, 885 F.2d 1439, 1443-44 (9th Cir.1989); Palmer, 810 F.2d at 516. "`Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy' as required for municipal section 1983 liability." Campbell, 43 F.3d at 977 (quoting Bennett, 728 F.2d at 768 n. 3); accord Piotrowski, 237 F.3d at 581.
Thus, "[a] customary municipal policy cannot ordinarily be inferred from single constitutional violations." Id.; accord Estate of Davis, 406 F.3d at 383; Johnson, 379 F.3d at 309-10. To demonstrate a governmental policy or custom under § 1983, a plaintiff must show "`"at least a pattern of similar, incidents in which the citizens were injured."'" Estate of Davis, 406 F.3d at 383 (quoting. Snyder, 142 F.3d at 798-99 (quoting Avita, 871 F.2d at 554-55)); accord. Fraire, 957 F.2d at 1278 (citing Languirand, 717 F.2d at 227-28). Only, if the plaintiff demonstrates that her injury resulted from a "`permanent and well settled'" practice may liability attach for injury resulting from a local government custom. Praprotnik, 485 U.S. at 127, 108 S.Ct. 915 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 168, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); accord Languirand, 717 F.2d at 223.
In the present case, Price has failed to adduce sufficient evidence demonstrating a policy or custom of the County authorizing or condoning discriminatory employment practices. Indeed, the Jefferson County Employment Application, which Plaintiff submitted in February 1989, explicitly states that "[i]t is the policy of Jefferson County not to discriminate in employment in relation to race, creed, color, national origin, sex, or age." Price has presented no controverting evidence suggesting that the County has an official policy authorizing such discriminatory actions.
Similarly, Price has not presented evidence of an established custom of race discrimination in Jefferson County. Price alleges that the County discriminated against her by: (1) reprimanding her for receiving personal telephone calls; (2) requiring her to provide twenty-four hours *692 notice before taking time off; (3) denying her two promotional opportunities; and (4) wrongfully terminating her employment. Plaintiff, however, has not shown that these actions were anything more than isolated incidents of adverse employment actions taken against an African-American employee. She does not contend that other African-American individuals employed by the County were routinely reprimanded, subjected to more stringent notice requirements, denied promotions, or impermissibly terminated. Accordingly, she has failed to demonstrate "a pattern of similar incidents." Fraire, 957 F.2d at 1278; see Thompson, 885 F.2d at 1443-44; Palmer, 810 F.2d at 516. Hence, there is no evidence that the County's employment decisions concerning Price were the result of a "permanent and well-settled" racially discriminatory practice. See Praprotnik, 485 U.S. at 127, 108 S.Ct. 915; Adickes, 398 U.S. at 168, 90 S.Ct. 1598.
Moreover, a governmental entity does not incur liability under § 1983 unless there exists "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton, 489 U.S. at 385, 109 S.Ct. 1197; see Victoria W., 369 F.3d at 482; Piotrowski, 237 F.3d at 580; Burns v. City of Galveston, 905 F.2d 100, 102 (5th Cir.1990). The Supreme Court has explained:
[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was, the `moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.
Board of County Comm'rs of Bryan County, 520 U.S. at 404, 117 S.Ct. 1382 (emphasis in original); see Johnson, 379 F.3d. at 310; Victoria W., 369 F.3d at 482 Spiller v. City of Tex. City, 130. F.3d 162, 167 (5th Cir.1997) (quoting Gunn, 81 F.3d at 533). "Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights."
Board of County Comm'rs of Bryan County, 520 U.S. at 415, 117 S.Ct. 1382 (emphasis in original). "Monell describes the high threshold of proof by stating that the policy must be the `moving force' behind the violation." Piotrowski, 237 F.3d at 580 (quoting Monell, 436 U.S. at 694, 98 S.Ct. 2018); see also City of Canton, 489 U.S. at 389, 109 S.Ct. 1197; Cox, 430 F.3d at 748. Hence, the "plaintiff must initially allege that an official policy or custom `was a cause in fact of the deprivation of rights inflicted.'" Spiller, 130 F.3d at 167 (quoting Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir.1994)); see Shields, 389 F.3d at 151.
Nevertheless, "`[t]his connection must be more than a mere "but for" coupling between cause and effect.'" Johnson, 379 F.3d at 310 (quoting Fraire, 957 F.2d at 1281 (citing City of Canton, 489 U.S. at 386, 109 S.Ct. 1197; Tuttle, 471 U.S. at 823, 105 S.Ct. 2427)). The plaintiff must also establish that a government policy or custom was the proximate cause of the injuries sustained. See Rheuark v. Shaw, 628 F.2d 297, 305 (5th Cir.1980), cert. denied, 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981) (holding that "[i]n order for a governmental unit to be liable under § 1983, the policy or custom must . . ., by the very terms of the statute, be a proximate cause of the constitutional violation"); accord Huffman v. County of Los Angeles, 147 F.3d 1054, 1059 (9th Cir. 1998), cert. denied, 526 U.S. 1038, 119 S.Ct. 1333, 143 L.Ed.2d 498 (1999); Trevino v. *693 Gates, 99 F.3d 911, 918 (9th Cir.1996), cert. denied, 520 U.S. 1117, 117 S.Ct. 1249, 137 L.Ed.2d 330 (1997); Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir.1996); Horn by Parks v. Madison County Fiscal Ct., 22 F.3d 653, 659 (6th Cir.), cert. denied, 513 U.S. 873, 115 S.Ct. 199, 130 L.Ed.2d 130 (1994); see also Johnson, 379 F.3d at 310-11. "Pointing to a municipal policy action or inaction as a `but-for' cause is not enough to prove a causal connection under Monell. Rather, the policy must be the proximate cause of the section 1983 injury." Van Ort v. Estate of Stanewich, 92 F.3d 831, 837 (9th Cir.1996), cert. denied, 519 U.S. 1111, 117 S.Ct. 950, 136 L.Ed.2d 837 (1997) (citing Mann v. City of Tucson, 782 F.2d 790, 793 (9th Cir.1986)); see Murray v. Earle, 405 F.3d 278, 290 (5th Cir.), cert. denied, ___ U.S. ___, 126 S.Ct. 749, 163 L.Ed.2d 573 (2005).
In this instance, Price has offered no evidence of a County official's or employee's policy or practice that constituted a "moving force" behind any of the allegedly discriminatory acts that were purportedly committed against her. See Piotrowski, 237 F.3d at 580. Rather, it is undisputed that Plaintiff received numerous written warnings, as well as counseling, to address her repeated problems with absenteeism, telephone usage, the filing system, and professional conduct, yet she failed to correct her shortcomings and ultimately lost her job as a consequence. In view of the fact that Price has not established the existence of a discriminatory policy or practice as the proximate cause of her asserted injuries, her § 1983 claim must fail. See Murray, 405 F.3d at 290; Van Ort, 92 F.3d at 837 (citing Mann, 782 F.2d at 793).
Therefore, because Price has introduced no evidence of a responsible policymaker or a constitutionally infirm governmental policy or custom that proximately caused her purported injuries, the County is entitled to summary judgment on Plaintiff's claims under § 1983.
E. State Law Claims
Federal court jurisdiction exists over an entire action, including state law claims, when the federal and state law claims "`derive from a common nucleus of operative fact' and are `such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)); accord Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 540, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002). Supplemental jurisdiction over state law claims, however, is a "`doctrine of discretion, not of plaintiff's right.'" City of Chicago v. International Coll. of Surgeons, 522 U.S. 156, 172, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (quoting Gibbs, 383 U.S. at 726, 86 S.Ct. 1130); accord Priester, 354 F.3d at 425. A district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3), accord Priester, 354 F.3d at 425; Heaton v. Monogram Credit Card Bank, 231 F.3d 994, 997 (5th Cir.2000), cert. denied, 533 U.S. 915, 121 S.Ct. 2520, 150 L.Ed.2d 693 (2001); Cabrol v. Town of Youngsville, 106 F.3d 101, 110 (5th Cir.1997) (citing Cinel v. Connick, 15 F.3d 1338, 1344 (5th Cir.), cert. denied, 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994) (citing Gibbs, 383 U.S. at 725, 86 S.Ct. 1130)). Consequently, a federal court must consider the provisions of 28 U.S.C. § 1367(c) and "weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction *694 over a case brought in that court involving pendent state-law claims." Cohill, 484 U.S. at 350, 108 S.Ct. 614; accord International Coll. of Surgeons, 522 U.S. at 173, 118 S.Ct. 523; Smith v. Amedisys Inc., 298 F.3d 434, 446 (5th Cir.2002); Batiste v. Island Records, Inc., 179 F.3d 217, 227 (5th Cir.1999), cert. denied, 528 U.S. 1076, 120 S.Ct. 792, 145 L.Ed.2d 668 (2000); Cabrol, 106 F.3d at 110; Cinel, 15 F.3d at 1344; Jones v. Adam's Mark Hotel, 840 F.Supp. 66, 69 (S.D.Tex.1993).
When federal law claims that serve as the basis for subject matter jurisdiction are dismissed and only state law claims grounded on supplemental jurisdiction remain, a district court has broad discretion to dismiss the state law claims. See 28 U.S.C. § 1367(c)(3); International Coll. of Surgeons, 522 U.S. at 173, 118 S.Ct. 523; Cohill, 484 U.S. at 349, 108 S.Ct. 614; Gibbs, 383 U.S. at 726-27, 86 S.Ct. 1130; Priester, 354 F.3d at 425; Heaton, 231 F.3d at 997; Brown v. Southwestern Bell Tel. Co., 901 F.2d 1250, 1254 (5th Cir.1990). The Supreme Court has counseled that a court should decline jurisdiction "`if the federal claims are dismissed before trial.'" Robertson v. Neuromedical Ctr., 161 F.3d 292, 296 (5th Cir. 1998), cert. denied, 526 U.S. 1098, 119 S.Ct. 1575, 143 L.Ed.2d 671 (1999) (quoting Gibbs, 383 U.S. at 726, 86 S.Ct. 1130). Moreover, in the Fifth Circuit, the "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 585 (5th Cir.1992) (citing Wong v. Stripling, 881 F.2d 200, 204 (5th Cir.1989)); see Batiste, 179 F.3d at 227. The rule, however, is "`neither mandatory nor absolute.'" Amedisys Inc., 298 F.3d at 447 (quoting Batiste, 179 F.3d at 227).
In this instance, Price's federal claims against the County are subject to summary judgment, leaving only her state law claims for race discrimination and retaliation in violation of the TCHRA. In this situation, because the federal claims are being dismissed before trial, the factors of judicial economy, convenience, fairness, and comity suggest that this court should decline to exercise jurisdiction over the remaining state law claims. See Cohill, 484 U.S. at 350, 108 S.Ct. 614; Metro Ford Truck Sales, Inc. v. Ford Motor Co., 145 F.3d 320, 328 (5th Cir.1998), cert. denied, 525 U.S. 1068, 119 S.Ct. 798, 142 L.Ed.2d 660 (1999). Therefore, Price's state law claims asserting race discrimination and retaliation in violation of the TCHRA will be remanded to state court.
III. Conclusion
Accordingly, the County's Motion for Summary Judgment is GRANTED with respect to Price's claims under § 1983. Plaintiff fails to present a claim that warrants relief. There remain no material facts in dispute, and the County is entitled to judgment as a matter of law. Moreover, the factors enumerated in 28 U.S.C. § 1367(c) lead to the conclusion that this case properly belongs in the state court where it began. No significant factor justifies retaining jurisdiction rather than remanding, while relevant statutory provisions and judicial decisions weigh heavily in favor of declining to exercise jurisdiction over the remaining state law claims. Therefore, Price's state law claims asserting race discrimination and retaliation in violation of the TCHRA are remanded to the 58th Judicial District Court of Jefferson County, Texas. See Burns-Toole v. Byrne, 11 F.3d 1270, 1276 (5th Cir.), cert. denied, 512 U.S. 1207, 114 S.Ct. 2680, 129 L.Ed.2d 814 (1994).