United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 27, 2000**

Charles R. Fulbruge III
Clerk

**REVISED, APRIL 28, 2000**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-30972

ANTHONY A. EDWARDS,

Plaintiff-Appellant,

versus

JOHNSON, Mr., Education Specialist at Federal
Detention Center Oakdale; HAM, Mr., District
Hearing Officer at Federal Detention Center
Oakdale; AUCOIN, Mr., VP-A Unit Counselor at
Federal Detention Center Oakdale,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Louisiana, Lake Charles

April 27, 2000

Before BARKSDALE, BENAVIDES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Anthony A. Edwards, an Immigration and Naturalization Service detainee awaiting deportation, appeals the district court's dismissal of his claims which challenged disciplinary hearing procedures and his punishment for violation of detention center policy. Edwards is appearing pro se and in forma pauperis. For the following reasons we affirm.

FACTS AND PROCEDURAL BACKGROUND

Anthony A. Edwards ("Edwards") is a citizen of the Caribbean nation of St. Vincent. In January 1997 he was convicted in federal court of unauthorized use of an access device in violation of 18 U.S.C. § 1029 (a) (1). That same month Edwards was brought to the Federal Detention Center in Oakdale, Louisiana ("FDC Oakdale") to await deportation. On August 8, 1997 Edwards was in the FDC Oakdale law library when a group of five or six visitors entered with Mr. Johnson ("Johnson"), an education specialist at FDC Oakdale. Edwards asked Johnson why the detainees could not give the visitors "their side of the story." Johnson explained that when the visitors returned he could tell them whatever he wanted. Edwards gave a note to one of the visitors which stated "Welcome to Louisiana, home of the INS Terrorist-Styled Concentration Camp where all constitutional rights are dispensed solely on the basis of national origin." Edwards also spoke to the group of visitors telling them that "what you see before you is not always the truth, just as there are two sides to every coin so too there are two sides to every story!" Following the incident, Edwards was charged with unauthorized contact with members of the general public, and placed in administrative detention pending the investigation of the charges.

On August 9, 1997 Edwards was given a written report containing the charges against him. Edwards submitted a list of potential witnesses and soon after was told that the charges against him were being forwarded to a Disciplinary Hearing Officer ("DHO"). On August 11, 1997 Edwards was given a list of inmate rights at the disciplinary hearing and told that his hearing would be held August 19, 1997. Edwards requested that Mr. Aucoin ("Aucoin"), a unit counselor at FDC Oakdale,

2

represent him at the disciplinary hearing. Aucoin advised Edwards to prepare a written account of his version of the incident. At the hearing DHO David Ham ("Ham") presided. Three other detainees testified at the hearing as witnesses for Edwards. Two of the detainees testified that they did not hear Mr. Johnson speak to Edwards at all. One detainee testified that he heard Mr. Johnson give Edwards permission to speak to the visitors, but that he did not hear Edwards ask for permission to give out the flier, and he did not hear Mr. Johnson grant Edwards permission to distribute the flier. Aucoin read the written statement which Edwards had prepared. DHO Ham found that Edwards had committed the act as charged by giving a note to a visitor without permission, and that as an act falling in the moderate category of prohibited acts Edwards should be sanctioned with fifteen days of disciplinary segregation. Ham also advised Edwards of his right to appeal the finding within twenty days.

In October 1997, Edwards appearing pro se and in forma pauperis filed the present action against DHO Ham, Johnson, and Aucoin (collectively "defendants" or "officials"). First, Edwards alleged that his due process rights under the Fifth Amendment had been violated during his hearing because he was given inadequate representation by Aucoin. Edwards further alleged that Ham had refused to fairly weigh his version of the events. Edwards also claimed that he was being denied access to the press in violation of the First Amendment. Edwards argued that his constitutional rights under the Fifth and Eighth Amendments were violated because he was the equivalent of a pretrial detainee and thus should not be held in solitary confinement. Edwards requested $3 million in monetary damages and an injunction to correct the "unjust principles and practices" at FDC Oakdale.

The case was referred to a magistrate judge. The defendants filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim pursuant to FED. R. CIV. P. 12(b)(1) and

3

12(b)(6) respectively, which the magistrate judge recommended granting. The magistrate judge concluded that all claims against the defendants in their official capacities were barred under the doctrine of sovereign immunity, and that any claims against the officials pursuant to 42 U.S.C. § 1983 could not be recognized because the defendants are not state officers.[1] The magistrate judge also found that Edwards' due process rights as to the hearing procedure, and his First Amendment rights to access to the press, had not been violated. Finally, the magistrate judge denied Edwards' request for injunctive relief due to Edwards' failure to exhaust his administrative remedies, and on the additional basis that Edwards was no longer housed at FDC Oakdale, and thus his claims for injunctive relief were moot. Following an independent review of the record and a de novo determination of the issues the district court adopted the magistrate judge's findings and dismissed the plaintiff's complaint with prejudice.

DISCUSSION

On appeal, Edwards argues that the district court erred in denying him injunctive relief on the basis that he failed to exhaust his administrative remedies. Edwards further contends that the

---

[1] Edwards does not argue in his initial brief on appeal that the district court erred in adopting the magistrate's finding of immunity for the defendants in their official capacities. Therefore, any challenge to these findings has been abandoned on appeal. See Yohey v. Collins, 985 F.2d 222, 225 (5th Cir. 1993).

Edwards also contends on appeal that the district court erred in denying his motion for relief from involuntary servitude. Edwards contends that requiring a pretrial detainee to perform work assignments is a violation of the Thirteenth Amendment's prohibition against involuntary servitude. In January 1998, Edwards filed a motion styled "Motion for Court Order to Permit the Plaintiff Full, Fair and Proper Access to the Courts...". This motion requested more access to the law library and for Edwards to be relieved from his assigned work duties. The magistrate judge considered this motion as a motion for a temporary restraining order, and denied it as such. Edwards did not appeal this order to the district court; therefore this court does not have jurisdiction to review the magistrate judge's order by addressing Edwards' involuntary servitude claim. See Colburn v. Bunge Towing Inc., 883 F.2d 372, 379 (5th Cir. 1989).

4

district court erred in not recognizing that his due process rights were violated during the hearing procedure, and were further violated by the imposition of punishment for the exercise of his First Amendment rights. Finally, Edwards contends that the district court erred by failing to find that solitary confinement in administrative segregation is cruel and unusual punishment for a pretrial detainee.

A district court's dismissal of a claim for lack of subject matter jurisdiction or failure to state a claim under 12 (b)(1) and 12(b)(6) respectively, is reviewed de novo. Morin v. Caire, 77 F.3d 116, 120 (5th Cir. 1996). The denial of injunctive relief is reviewed for abuse of discretion. Peaches Entertainment v. Entertainment Repertoire, 62 F.3d 690, 693 (5th Cir. 1995).

I.      Exhaustion of Administrative Remedies

Edwards' original complaint requested $3 million in monetary damages and "court order(s) for correction of unjust principles and practices as th[e] court deems to be both just and proper." This request for injunctive relief was intended to correct the policies and practices of FDC Oakdale. Edwards was transferred out of FDC Oakdale in 1998. Therefore, any claims for injunctive relief to correct procedures and practices at that facility are moot. See Hernandez v. W.L. Garrison, 916 F.2d 291, 293 (5th Cir. 1990); Pembroke v. Wood County, Texas, 911 F.2d 225, 228 (5th Cir. 1993).

We therefore construe the remaining claims as a request for exclusively monetary relief. This court has not directly addressed the question of whether a pretrial detainee seeking monetary relief must exhaust available administrative remedies before filing suit in federal court for damages. This court's previous rulings regarding exhaustion of administrative remedies have

interpreted provisions of 42 U.S.C. § 1997e, and that statute's amendments as codified in the

Prison Litigation Reform Act (PLRA), Pub. L. No. 104-103 § 803, 110 Stat. 1321 (1996). See

e.g., Arvie v. Stalder, 53 F.3d 702, 704-05 (5th Cir. 1995) (holding that although § 1997e did not

require it, federal prisoners must exhaust administrative remedies before challenging conditions of

their confinement); Whitley v. Hunt, 158 F.3d 882 (5th Cir.1998).  However, we have held that

the PLRA does not apply to alien detainees.  Ojo v. Immigration and Naturalization Service, 106

F.3d 680, 682 (5th Cir. 1997).  Thus, our previous decisions regarding federal prisoners and

exhaustion of administrative remedies are not directly applicable  in the present case.

The Supreme Court has offered guidance on the general purposes of requiring exhaustion

of administrative remedies.  In McCarthy v. Madison, 503 U.S. 140, 144, 112 S.Ct. 1081, 1086,

117 L.Ed. 2d 291 (1992)[2], the Court found that where Congress has not clearly required

exhaustion, sound judicial discretion governs.  The Court stated, "in determining whether

exhaustion is required, federal courts must balance the interests of the individual in retaining

prompt access to a federal judicial forum against the countervailing institutional interests favoring

exhaustion."  Id. at 146.    There are at least three broad sets of circumstances in which the

interests weigh heavily against requiring administrative exhaustion: 1) requiring resort to

administrative remedy may prejudice subsequent litigation, due to an unreasonable time frame or

danger of the plaintiff suffering irreparable harm, 2) the administrative remedy may be inadequate

because the agency is not empowered to grant the relief requested, and 3) the administrative

---

[2] McCarthy was also a case involving interpretation of 42 U.S.C. § 1997e. See McCarthy, 503
U.S. at 150.  Therefore, it is not directly applicable to the present case.  However, the Court also
included a general discussion of the purposes of administrative exhaustion requirements, thus lending
guidance in the present case.

remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it. Id. at 147-48.

In the present case, it is doubtful that the administrative remedy would be adequate because the agency is not empowered to grant Edwards monetary relief. There is no indication either from federal statutes or the applicable federal regulations[3] that federal detention centers will provide monetary relief to detainees who have filed Bivens[4] claims against federal officials. Therefore, FDC Oakdale and its administrative remedies were not capable of affording monetary relief to Edwards. Cf. Whitley, 158 F.3d at 887 (finding that plaintiff need not pursue federal remedies when seeking exclusively monetary relief because there are no prison remedies capable of affording such relief); McCarthy, 503 U.S. at 149. The inadequacy of the administrative remedy to provide the requested relief is sufficient to relieve the plaintiff of his responsibility to exhaust administrative remedies. Therefore, Edwards was not required to exhaust his administrative remedies before proceeding with his claim for monetary damages.[5] Although we disagree with the lower court's conclusion on administrative remedies, given Edwards' transfer which makes his injunctive claims moot, and our conclusion that Edwards was not required to

---

[3] 28 C.F.R. § 542.10- 542.15 outlines the administrative remedy program for the Bureau of Prisons.

[4] Under Bivens, a person may sue a federal agent for money damages when the federal agent has allegedly violated that person's constitutional rights. See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

[5] As discussed *infra*, because we have found Edwards' claims for injunctive relief to have been moot before the district court's ruling on the defendants' motion to dismiss, we construe his claim as a request for monetary damages only. Therefore, this discussion does not address whether a detainee requesting both injunctive and monetary relief would be required to exhaust administrative remedies.

exhaust his administrative remedies as to his monetary claims, Edwards cannot claim any reversible error. The magistrate judge fully considered the merits of Edwards' complaint and on de novo review we may affirm the district court's decision on any basis sustainable by the record.[6]

II.    <u>Punishment Prior to Adjudication of Guilt</u>

Edwards argues that his placement in administrative segregation for eleven days before his disciplinary hearing, and his fifteen days in disciplinary segregation for engaging in unauthorized contact with the public was a violation of his Eighth Amendment and Fifth Amendment rights. First, as an INS detainee, Edwards' imprisonment at FDC Oakdale did not directly result from conviction for a crime; therefore the Eighth Amendment's prohibition against cruel and unusual punishment is inapplicable. <u>See</u> <u>Ortega v. Rowe</u>, 796 F.2d 765, 767 (5th Cir. 1986), <u>cert. denied</u>, 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987) (explaining that because a detainee's imprisonment did not result from a conviction the Eighth Amendment is inapplicable). We consider a person detained for deportation to be the equivalent of a pretrial detainee; a pretrial detainee's constitutional claims are considered under the due process clause instead of the Eighth Amendment. <u>Id.</u> (citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 n.16, 99 S.Ct. 1861, 1871, 60 L.Ed. 22d 447 (1979)).

This court has previously detailed the proper analysis applicable to constitutional challenges by pretrial detainees. <u>See</u> <u>Olabishomoto v. City of Houston</u>, 185 F.3d 521, 526 (5th

---

[6] The magistrate's report and recommendation included a full discussion of Edwards' due process and First Amendment arguments, despite the conclusion that Edwards had not exhausted his administrative remedies. The district court's order dismissing Edwards' claim with prejudice stated that it had completed a de novo review of the issue and concluded that the magistrate's findings were in compliance with the applicable law.

Cir. 1999); <u>Scott v. Moore</u>, 114 F.3d 51 (5th Cir. 1997) (en banc); <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996) (en banc). We begin by determining whether to classify the challenge as an attack on a "condition of confinement" or an "episodic act or omission". <u>Olabishomoto</u>, 185 F.3d at 526 (citing <u>Scott</u>, 114 F.3d at 53). For example, when a detainee complains of the number of bunks in a cell or mail privileges that is best characterized as a complaint about general conditions of confinement. <u>Scott</u>, 114 F.3d at 53. However, where the complaint is one concerning a particular act or omission by one official it is properly characterized as an "episodic act or omission". <u>Id.</u>

In the present case, Edwards complains that the particular act of confining him to administrative detention and disciplinary segregation was a constitutional violation. Thus, because Edwards' claims concern a particular act instead of the general conditions at FDC Oakdale, we will consider his complaint as one regarding an "episodic act or omission." To prove an underlying constitutional violation in an episodic acts case, the detainee must establish that the official acted with subjective deliberate indifference. <u>Id.</u> at 54.

As to Edwards being placed in administrative segregation he claims that Johnson made a false charge against him for unauthorized contact with the public, after granting Edwards permission to communicate with the visitors. However, one of the detainee witnesses at the disciplinary hearing stated that he did not hear Johnson give Edwards permission to hand out the flier, and that Edwards did not ask for permission to hand it out. Edwards himself, in his written statement to DHO Ham, admitted that he handed out the flier. The evidence does not support the conclusion that Johnson falsely reported Edwards for a violation of detention center rules, thus Johnson was not deliberately indifferent to Edwards' rights under the Due Process Clause.

9

Edwards also argues that it was inappropriate for DHO Ham to place him in fifteen days of disciplinary segregation for his infraction, especially in light of his eleven-day placement in administrative detention prior to the disciplinary hearing. The regulations which govern disciplinary hearings state that unauthorized contact with the public is a moderate category offense for which an inmate may be placed in disciplinary segregation for up to 15 days. 28 C.F.R. § 541.13 Table 3. The regulations also provide for administrative detention pending a hearing for violation of the Bureau of Prisons regulations. 28 C.F.R. § 541.22. Furthermore, these disciplinary procedures are applicable to pretrial detainees. 28 C.F.R. § 551.116. It is clear that DHO Ham followed the regulations for disciplinary hearings and sanctions as set forth in the federal regulations, thus he was not deliberately indifferent to Edwards' due process rights.

III.     Other Due Process Issues

Edwards further alleges that the procedures used during his disciplinary hearing violated his due process rights. Specifically, Edwards argues that DHO Ham's refusal to accept his written statement and Aucoin's refusal to follow departmental directives regarding  representation of detainees violated his constitutional rights. Again, these complaints concern episodic acts instead of a general complaint about all disciplinary hearing procedures conducted at the detention center. Therefore, Edwards must plead facts that would demonstrate that the defendants were deliberately indifferent to his rights.

In Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974), the Supreme Court held that a pretrial detainee who is placed in solitary confinement pursuant to disciplinary proceedings may be entitled to more extensive due process protections. These protections include having the right to receive written notice of the charges against him at least twenty-four hours before the hearing, a

10

written statement of the evidence relied on, reasons for the disciplinary action being taken, and the opportunity to present witnesses and documentary evidence. Id. at 563-66.

All of these procedures were observed in the present case. From Edwards' complaint, and the accompanying exhibits, it is clear that Edwards received written notice of the charges against him, a written statement of the evidence against him, and he was afforded an opportunity to present witnesses. Although Edwards now claims his written statement was not accepted for consideration, the report which was made at the time of the hearing summarizes Edwards' statement.

Edwards also contends that Aucoin did not follow regulations for representing detainees. However, Edwards does not specifically state in his complaint, or on appeal which regulations were not followed. Furthermore, a violation of prison regulations in itself is not a constitutional violation. See Jackson v. Cain, 864 F.2d 1235, 1251-52 (5th Cir. 1989). Therefore, Edwards has failed to state a claim upon which relief can be granted regarding the disciplinary procedures used at his hearing.

IV.     First Amendment

Edwards argues that placing him in "solitary confinement" for passing a note to the visitors is a violation of his First Amendment rights of freedom of expression and freedom to communicate with the press. Edwards raised the First Amendment claim in the district court as a violation of his right of access to the press; however, the district court construed the claim liberally to assert also a violation of his right to free speech. The district court found that Edwards was disciplined, not for speaking to the visitors, but for handing a note to a visitor. The

11

district court determined that Edwards did not have a constitutional right to have physical contact with the public.

Edwards has not provided support for his assertion that the sanction, which was imposed for handing a note to a visitor, implicated his right to free speech. A pretrial detainee's First Amendment rights are implicated if the action taken against him represents an "exaggerated response" by officials to the legitimate need to "preserve internal order and discipline and to maintain institutional security." Mann v. Smith,796 F.2d 79, 82 (5th Cir. 1986) (citing Bell,441 U.S. at 547-48). FDC Oakdale's refusal to allow Edwards to have unauthorized physical contact with visitors is a reasonable response and regulation to maintaining safety and order in the facility. Therefore, Edwards' punishment for violating this regulation is not a violation of his First Amendment rights.

V.      Equal protection

Edwards asserts that he was denied equal protection because he was not given credit for the time he spent in administrative segregation prior to the disciplinary hearing. A violation of equal protection occurs only when the governmental action in question "classif[ies] or distinguish[es] between two or more relevant persons or groups[,]" Brennan v. Stewart, 834 F.2d 1248, 1257 (5th Cir. 1988), or when a classification impermissibly interferes with a fundamental right. Hatten v. Rains, 854 F.2d 687, 690 (5th Cir. 1988). A claimant who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination. McCleskey v. Kemp, 481 U.S. 279, 292 (1987). Discriminatory purpose "implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group[.]"

12

Lavernia v. Lynaugh, 845 F.2d 493, 496 (5th Cir. 1988) (internal quotations, citations, and footnote omitted).

Edwards has not shown that his jailers distinguished between two relevant groups or that any fundamental right was at stake. Thus, he has failed to show any equal protection violation.

CONCLUSION

We find that Edwards was not required to exhaust his administrative remedies before seeking monetary relief. Edwards' due process rights were not violated by the disciplinary hearing procedures or his placement in solitary confinement. Finally, we find that Edwards was not deprived of his rights under the First Amendment or denied equal protection.

AFFIRMED.