

# NUMBER 13-21-00048-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**AARON MALONE, TDCJ NO. 1697643,**         **Appellant,**

**v.**

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE,**
**ET. AL.,**         **Appellees.**

---

### On appeal from the 36th District Court
### of Bee County, Texas.

---

## MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Silva**
**Memorandum Opinion by Justice Benavides**

In this case involving a slip-and-fall claim by an inmate, appellant Aaron Malone,

proceeding pro se and *in forma pauperis*, appeals from the dismissal of his suit against

appellees Texas Department of Criminal Justice (TDCJ) and Christina Rodriguez.[1] By his first two issues, Malone argues that he properly exhausted his administrative remedies with respect to his premises defect claim against TDCJ and that he otherwise alleged a viable claim under the Texas Tort Claims Act (TTCA). In his third issue, Malone argues that his *ultra vires* and Eighth Amendment claims against Rodriguez also have an arguable basis in law. We reverse and remand on the premises defect claim and affirm the remainder of the judgment.

## I.    BACKGROUND[2]

Malone filed suit in January 2015 alleging that he slipped and fell on a wet spot caused by a leaky water cooler in his housing unit. He also alleged that he received inadequate medical care afterwards. At the time, Malone was an inmate at the McConnell Unit in Beeville, Texas, but during the pendency of the litigation, he was transferred to the Ellis Unit in Huntsville, Texas.

Attached to Malone's petition is a "Step 1 Offender Grievance Form," signed and dated by him on September 8, 2014, in which he complains about the conditions that caused his fall and the medical treatment he received for his injuries. Specifically, Malone said that a water cooler placed on top of the water fountain was "leaking" but there were "no wet floor signs around the leakage." He also said that, despite experiencing swelling

---

[1] During the pendency of this case, appellee Christina Rodriguez married and changed her name to Christina Quintero. Although her filings reflect her name change, Malone continued to refer to her as Rodriguez in his pleadings; therefore, we will do the same.

[2] This case has a lengthy procedural history that involves distinct claims against other parties that were dismissed or severed from the suit. *See Zambrano v. Malone*, No. 13-17-00022-CV, 2018 WL 549198 (Tex. App.—Corpus Christi–Edinburg Jan. 25, 2018, no pet.) (mem. op.). Additionally, Malone alleged claims against TDCJ and Rodriguez that he has implicitly abandoned on appeal. We highlight only those facts that are necessary to our disposition of this appeal. *See* TEX. R. APP. P. 47.4.

and severe back pain from the fall that occurred five days prior, he had yet to receive an x-ray of his back. In a section of the form where the inmate is asked to identify the actions that would resolve their complaint, Malone asked, among other things, for the preservation of any video of his fall, an x-ray of his back, and the placement of a caution sign when water is on the floor. A registered nurse responded to the grievance, outlining the medical treatment Malone received prior to his grievance and noting that he had since received an x-ray of his back.

Also attached to his petition is a "Step 2 Offender Grievance Form" bearing the same grievance number as the Step 1 form. This form, signed and dated by Malone on November 5, 2014, complains of worsening symptoms and a lack of effective treatment. Specifically, Malone said that he was suffering from ongoing "numbness," "tingling," "intense pain," and "black-outs"; that the medication prescribed to him was not alleviating his pain; and that the medical staff at the prison were unable to diagnose or treat his symptoms. He requested to see a specialist.

Malone's Step 2 grievance was processed and returned to him with the following response:

> In your Step 1 medical grievance, you stated you have been denied medical treatment for a back injury you received on 09/03/2014 when you slipped in water on the floor near the water fountain.
>
> Review of the medical record reveals documentation to support the response at Step 1. Further review of the documentation shows you were issued a back brace for support from the Brace & Limb specialty clinic on 09/18/2014. You were seen on 10/03/2014 and received an order for [M]eloxicam for pain and you were referred to the Ortho Spine specialty clinic. The referral was closed and sent to Neurosurgery. Neurosurgery approved the referral and an appointment is pending for December 2014.

3

The response was signed with the following stamp: "Step II Medical Grievance Program Office of Professional Standards TDCJ Health Services Division." Malone received the response on December 19, 2014, and he filed suit in January 2015.

In March of 2015, the Office of the Attorney General for the State of Texas (OAG) advised the trial court that it had reviewed Malone's pleadings and found his premises defect claim to be procedurally compliant with the pre-filing requirements enumerated in Chapter 14 of the Texas Civil Practice and Remedies Code. Three months later, TDCJ, now represented by the OAG, filed a Chapter 14 motion to dismiss Malone's various claims, including his premises defect claim, for failure to exhaust his administrative remedies. With respect to his premises defect claim, TDCJ argued that Malone's Step 2 grievance failed to advise prison officials of the "operative facts" of his slip and fall. The trial court granted the motion in part but denied the motion with respect to Malone's premises defect claim.

In his "Third Supplemental Petition," Malone added Rodriguez as a party to the litigation, including a claim that she was individually liable for his slip and fall. Malone also alleged that Rodriguez, then-risk manager for the McConnell Unit, met with him after his fall but failed to take any corrective action to remove or ameliorate the dangerous condition, which, according to Malone, was a violation of TDCJ safety policies and amounted to *ultra vires* conduct. Malone further alleged that, although he was unaware of the dangerous condition at the time of his fall, he had since learned that TDCJ received several complaints from other inmates about the dangerous condition both "before and after" the incident. Malone asked the trial court to enjoin TDCJ and Rodriguez by requiring

4

them to take various corrective actions.

In June 2019, TDCJ filed a plea to the jurisdiction arguing that Malone failed to sufficiently allege TDCJ's prior knowledge about the dangerous condition. In a response, Malone further alleged that Rodriguez "knew that her chosen method to operate and display self-service water dispensers in the housing areas w[as] dangerous from the inception of their use because many complaints were made to her that the coolers were busted and leaking water [o]nto the floor[,] causing slip and fall injuries." The trial court denied the plea.

Rodriguez then filed a Chapter 14 motion to dismiss, arguing that Malone had not alleged a viable premises defect claim against her because she was entitled to dismissal under the election of remedies provisions of the TTCA.[3] Rodriguez also argued that Malone's *ultra vires* claim was defective because he did not "identify any statutory or constitutional provision [that she] failed to comply with."

During a hearing on the matter, Rodriguez further argued that Malone was merely complaining about her performance of discretionary duties, and therefore, such conduct did not fall within the *ultra vires* exception to immunity. Malone responded that Rodriguez had violated nondiscretionary policies in TCDJ's Risk Management Program Manual. At the conclusion of the hearing, the trial court carried the motion and granted Malone forty-five days to file a response to Rodriguez's motion.

Instead of responding directly to the motion, Malone filed his "Fourth Supplemental Petition." In it, he alleged, among other things, that Rodriguez "acted ultra vires by failing

---

[3] On appeal, Malone does not challenge the dismissal of his negligence claim against Rodriguez in her individual capacity.

to perform her ministerial duties under Executive Directive 10.59, 10.61, OSHA, and exceeded her legal authority by violating Malone's Texas and 8th Amendment rights against cruel and unusual[] punishment by being deliberate[ly] indifferent to his health and safety." He asked for a declaration that Rodriguez acted *ultra vires* and sought injunctive relief against TDCJ and Rodriguez. As a separate claim, Malone also alleged that Rodriguez, acting in her individual capacity, violated his Eighth Amendment rights "by being deliberate[ly] indifferent to his health and safety."

Thereafter, TDCJ and Rodriguez filed another Chapter 14 motion to dismiss based, in part, on a failure to exhaust administrative remedies. In this motion, filed nearly six years after the litigation began, TDCJ argued for the first time that Malone failed to properly exhaust his premises defect claim because, contrary to grievance system rules, he waited more than fifteen days to submit his Step 2 grievance. According to TDCJ, this deficiency was apparent from the face of the grievance forms filed with Malone's original petition. Additionally, TDCJ and Rodriguez raised several jurisdictional arguments, including that Malone's claims for equitable relief became moot when he was transferred to another unit. However, TDCJ did not re-urge its argument that Malone failed to allege a viable premises defect claim against TDCJ under the TTCA.

Without conducting a hearing, the trial court granted the motion "in all things" and dismissed with prejudice all of Malone's remaining claims against TDCJ and Rodriguez. Malone filed a motion for new trial, which was overruled by operation of law, and this appeal ensued.

6

## II. STANDARD OF REVIEW & APPLICABLE LAW

Chapter 14 applies to a suit, other than under the Family Code, brought by an inmate who files an affidavit or declaration of inability to pay costs. TEX. CIV. PRAC. & REM. CODE ANN. § 14.002. Under Chapter 14, a trial court may dismiss an inmate's claim, either before or after service of process, if it finds the claim is frivolous or malicious. *Id.* § 14.003(a)(2); *Hamilton v. Williams*, 298 S.W.3d 334, 339 (Tex. App.—Fort Worth 2009, no pet.). A claim that has no arguable basis in law or fact is frivolous. TEX. CIV. PRAC. & REM. CODE ANN. § 14.003(b)(2). A claim has no arguable basis in law if the inmate failed to exhaust his administrative remedies. *Retzlaff v. Tex. Dep't of Crim. Just.*, 94 S.W.3d 650, 653 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). If an inmate fails to exhaust his administrative remedies, we may affirm a dismissal even if the ground was not presented in a motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.005; *see also Nelson v. Davis*, No. 13-19-00122-CV, 2020 WL 2213965, at *2 (Tex. App.—Corpus Christi–Edinburg May 7, 2020, no pet.) (mem. op.).

Generally, we review a trial court's dismissal of a lawsuit under Chapter 14 for an abuse of discretion. *See In re Douglas*, 333 S.W.3d 273, 293 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). However, when a trial court dismisses a claim as frivolous without a fact hearing, the issue on appeal is limited to whether the claim has an arguable basis in law. *Smith v. Tex. Dep't of Crim. Just.–Institutional Div.*, 33 S.W.3d 338, 340 (Tex. App.—Texarkana 2000, pet. denied). This is a legal issue that we review de novo. *See Moreland v. Johnson*, 95 S.W.3d 392, 394 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

7

In conducting our review, we accept as true the allegations in the inmate's petition and review the types of relief and causes of action pleaded to determine whether, as a matter of law, the petition stated a cause of action that would authorize relief. *Hamilton v. Pechacek*, 319 S.W.3d 801, 809 (Tex. App.—Fort Worth 2010, no pet.). As with any suit against the government, an inmate suing TDCJ must plead a viable waiver of immunity; otherwise, the claim has no arguable basis in law. *See Lopez v. Serna*, 414 S.W.3d 890, 896 (Tex. App.—San Antonio 2013, no pet.); *see also McCray v. Langehenning*, No. 13-07-00143-CV, 2008 WL 3906395, at *1 (Tex. App.—Corpus Christi–Edinburg Aug. 26, 2008, no pet.) (mem. op.).

### III.     PREMISES DEFECT CLAIM

By his first two issues, Malone contends that his premises defect claim has an arguable basis in law because (1) he exhausted his administrative remedies, and (2) he alleged a viable waiver of immunity under the TTCA.

### A.     Exhaustion of Administrative Remedies

"A court shall dismiss a claim if the inmate fails to file the claim before the 31st day after the date the inmate receives the written decision from the grievance system." TEX. CIV. PRAC. & REM. CODE ANN. § 14.005(b). Here, it is undisputed that Malone timely filed his suit within thirty-one days of receiving TDCJ's response to his Step 2 grievance. Instead, TDCJ argues that Malone failed to properly exhaust his administrative remedies because his Step 2 grievance was untimely and failed to alert prison officials of the "operative facts" in this litigation; namely, the dangerous condition that allegedly caused his injuries. *See* TEX. GOV'T CODE ANN. § 501.008(d). Malone responds that under the

8

doctrines of res judicata and collateral estoppel, TDJC is precluded from relitigating the exhaustion issue because the trial court previously denied TDJC's Chapter 14 motion in a "final order." Regardless, Malone contends that he properly exhausted his administrative remedies. We begin with Malone's preclusion argument.

### 1. Res Judicata & Collateral Estoppel

Malone's reliance on res judicata and collateral estoppel is misplaced. These "related concepts concern[] the conclusive effects given final judgments." *Barr v. Resol. Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992) (citing *Puga v. Donna Fruit Co.*, 634 S.W.2d 677, 679 (Tex. 1982)). Res judicata bars parties from relitigating a claim or cause of action that has been finally adjudicated. *Id.* (first citing *Gracia v. RC Cola–7–Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex. 1984); and then citing *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984)). Correspondingly, collateral estoppel prevents parties from relitigating issues already resolved in a prior suit. *Id.* (citing *Bonniwell*, 663 S.W.2d at 818).

At the outset of the litigation, TDCJ filed a Chapter 14 motion to dismiss Malone's various claims for failure to exhaust his administrative remedies on each claim. The trial court granted the motion with respect to certain claims but denied it with respect to Malone's premises defect claim. Several years later, TDCJ filed another motion arguing that Malone failed to exhaust his administrative remedies on his premises defect claim, and this time, the trial court granted the motion. According to Malone, this was improper because the trial court's initial decision became a "final order," thereby preventing the trial court from revisiting the issue.

9

A final order is one that disposes of all parties and claims. *Crites v. Collins*, 284 S.W.3d 839, 840 (Tex. 2009) (per curiam) (citing *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001)). Here, the order Malone relies on was interlocutory, rather than final, because it disposed of some parties and claims but retained others. *See id.* And as an interlocutory order, the trial court retained the power to set it aside at any time before a final judgment. *See In re Panchakarla*, 602 S.W.3d 536, 539–40 (Tex. 2020) (orig. proceeding) (per curiam) (citing *Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex. 1993) (per curiam)). We overrule Malone's first issue in part.

### 2. Timeliness of Step 2 Grievance

TDCJ contends that although it accepted Malone's Step 2 grievance and provided him with "a written decision issued by the highest authority provided for in the grievance system," Malone nonetheless failed to properly exhaust his administrative remedies because he filed his Step 2 grievance on November 5, 2014, outside the fifteen-day window required under the grievance system. *See* TEX. GOV'T CODE ANN. § 501.008(d)(1); TEX. DEP'T OF CRIM. JUST., OFFENDER ORIENTATION HANDBOOK 74 (rev. Feb. 2017), https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf. According to TDCJ, this procedural deficiency is apparent from the face of the Step 1 grievance form, which bears a stamp indicating that the Step 1 response was returned to Malone on October 2, 2014, more than a month before he filed his Step 2 grievance.

However, along with his motion for new trial, Malone filed an affidavit arguing that his Step 2 grievance *was* timely because, contrary to the return stamp, "[t]he grievance department lost this [Step 1] grievance," and he actually received the response on

10

November 5, 2014—the same day he submitted his Step 2 grievance. He further averred that "[t]he Warden authorized and approved the grievance department to provide [him] a copy of the Step 1 [response] and process [his] Step 2 grievance."[4] Considering the trial court did not hold a hearing on TDCJ's Chapter 14 motion, we conclude that there is a fact issue as to the timeliness of Malone's Step 2 grievance. Accordingly, dismissing Malone's premises defect claim as a matter of law on this basis was improper.

### 3. "Operative Facts"

On appeal, TDCJ asks us to affirm the dismissal of Malone's premises defect claim on the alternative ground that his Step 2 grievance failed to advise prison officials of the "operative facts" of his claim.[5] *See* TEX. GOV'T CODE ANN. § 501.008(d). Specifically, TDCJ finds fault in Malone's Step 2 grievance because it "does not contain any mention of the allegedly dangerous condition that ultimately underlies the claims forming the basis of this suit." Instead, TDCJ notes that Malone "only complains about the medical treatment that he has received."

As our sister court has explained, "the purpose of the exhaustion requirement is to give prison administrators an opportunity to address a problem." *Fernandez v. T.D.C.J.*, 341 S.W.3d 6, 12 (Tex. App—Waco 2010, no pet.) (cleaned up) (quoting *Johnson v. Johnson*, 385 F.3d 503, 518 (5th Cir. 2004)). Accordingly, to satisfy the exhaustion requirement, an inmate's grievance must provide prison officials with notice of the

---

[4] We note that, unlike other Step 2 grievances in this case that were returned to Malone unprocessed because they were untimely, TDCJ accepted this Step 2 grievance and provided him with a final administrative decision. While certainly not conclusive, this fact is at least consistent with Malone's explanation.

[5] As previously noted, this ground was raised in TDCJ's first Chapter 14 motion filed at the beginning of the case, and the trial court rejected it.

11

relevant "operative facts" that serve as the basis for his complaint. *Id.* (citing TEX. GOV'T CODE ANN. § 501.008(d)).

In his Step 1 grievance, Malone clearly identified the dangerous condition that allegedly caused him to slip and fall. But TDCJ's suggestion that Malone needed to repeat this specific allegation in his Step 2 grievance is not consistent with how the grievance system operates. In accordance with grievance system rules, Malone attached his Step 1 response to his Step 2 grievance. *See* OFFENDER ORIENTATION HANDBOOK 73 ("Step 2 appeals shall be accompanied by the original, answered Step 1."). Thus, prison officials reviewing Malone's Step 2 grievance were not only aware of his ongoing complaint about inadequate medical care but also the circumstances that allegedly caused his injuries. Indeed, in their response to Malone's Step 2 grievance, prison officials acknowledged that they had reviewed Malone's Step 1 grievance and his claim that he "slipped in water on the floor near the water fountain."

If "the purpose of the exhaustion requirement is to give prison administrators an opportunity to address a problem," then that purpose was satisfied here. *See Fernandez*, 341 S.W.3d at 12 (quoting *Johnson*, 385 F.3d at 518). We sustain Malone's first issue in part.

## B. Waiver of Immunity

As another alternative for affirming the dismissal, TDCJ argues that Malone failed to allege a viable premises defect claim under the TTCA. Anticipating TDCJ's argument, Malone contends by his second issue that he did allege a viable waiver of immunity. As previously noted, the trial court rejected TDCJ's jurisdictional argument. We agree with

12

Malone and the trial court.

Governmental units like TDCJ are generally immune from tort claims unless immunity has been waived under the TTCA. *Tex. Dep't of Crim. Just. v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). The TTCA provides a limited waiver of immunity for certain tort claims against governmental entities, including personal injury caused by a condition or use of real property "if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). "[I]f a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." *Id.* § 101.022(a). The elements for a premises defect claim involving a licensee are: (1) a condition on the premises posed an unreasonable risk of harm; (2) the defendant had actual knowledge of the danger; (3) the plaintiff did not have actual knowledge of the danger; and (4) the defendant breached its duty of ordinary care by either failing to warn of the condition or failing to make the condition reasonably safe. *State v. Williams*, 940 S.W.2d 583, 584 (Tex. 1996) (per curiam).

The parties agree that Malone has alleged a premises defect claim based on an unreasonably dangerous condition—the wet floor—caused by leaky water coolers. *See Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 391 (Tex. 2016) ("Just as at common law, where slip/trip-and-fall cases have consistently been treated as premises defect causes of action, under the [TTCA], when an item of tangible personal property creates a condition of real property that results in a slip/trip-and-fall injury, it is properly characterized as a premises defect cause of action."). According to TDCJ, Malone alleged

13

that prison officials had prior knowledge of the leaky water coolers but not the dangerous condition caused by them.

However, Malone specifically alleged that prison officials received prior complaints that "the coolers were busted and leaking water [o]nto the floor[,] causing slip and fall injuries." *See Sampson*, 500 S.W.3d at 392 ("Although there is no one test for determining actual knowledge that a condition presents an unreasonable risk of harm, courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." (quoting *Univ. of Tex.–Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (per curiam))). Moreover, he alleged that prison officials knew that the specific placement of the water coolers exacerbated the dangerous condition. *See City of San Antonio v. Rodriguez*, 931 S.W.2d 535, 537 (Tex. 1996) (per curiam) (rejecting no-evidence complaint where "[d]epending on the position of the leaks above the floor and the amount of rain, the jury might have inferred that the person in charge knew that there would be water on the floor"). Liberally construing Malone's pleadings and accepting his allegations as true, we conclude that he has alleged a legally viable premises defect claim against TDCJ under the TTCA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). We sustain Malone's second issue.

## IV. CLAIMS AGAINST RODRIGUEZ

In her Chapter 14 motion to dismiss, Rodriguez argued that Malone's claims against her were jurisdictionally infirm for various reasons. By his third issue, Malone counters that his *ultra vires* and Eight Amendment claims are legally viable. Without reaching Rodriguez's jurisdictional arguments, we conclude that Malone failed in the first

14

instance to exhaust his administrative remedies with respect to these claims.

Over the course of the litigation, Malone "supplemented" his petition several times with new claims that arose against other parties during the pendency of the case. With his "Second Supplemental Petition," Malone filed a "Supplemental Affidavit of Grievances" with four additional pairs of Step 1 and Step 2 grievance forms to demonstrate that he exhausted his administrative remedies before adding these parties and claims to the suit.

However, when Malone filed his "Third Supplemental Petition," adding Rodriguez as a party, he did not submit any new grievance forms, and none of his previous grievances mentioned Rodriguez. Likewise, with his "Fourth Supplemental Petition," Malone added an Eighth Amendment claim against Rodriguez but did not provide any new grievances. According to Malone, these claims against Rodriguez came to light over the course of the litigation.

Although Malone could not be expected to know at the outset what he only discovered during the litigation process, he was still required, as he had done before, to exhaust his administrative remedies before adding Rodriguez and these distinct claims to the suit. *See* TEX. GOV'T CODE ANN. § 501.008(d); *see also Riddle v. TDCJ-ID*, No. 13-05-054-CV, 2006 WL 328127, at *2 (Tex. App.—Corpus Christi–Edinburg Feb. 9, 2006, pet. denied) (mem. op.) ("Riddle did not exhaust the grievance procedures for those individuals named in the claim who were not named in his grievance."). To be sure, if a prison employee is ignoring prison policies and violating the constitutional rights of inmates, as Malone alleges here, prison officials must be given the first opportunity to

address the issue before an inmate looks to the courts for relief. *See Fernandez*, 341 S.W.3d at 12. We conclude that none of Malone's grievances, including his initial grievance complaining of his slip and fall and ensuing medical treatment, alerted prison officials to the "operative facts" of his *ultra vires* and Eighth Amendment claims against Rodriguez. *See* TEX. GOV'T CODE ANN. § 501.008(d). Accordingly, these claims, and the declaratory and injunctive relief Malone seeks from them, were not exhausted through the administrative process.[6] We overrule Malone's third issue and affirm the dismissal of his claims against Rodriguez.

## V. CONCLUSION

We reverse the dismissal of Malone's premises defect claim and remand that single claim for further proceedings. We affirm the remainder of the trial court's order.

GINA M. BENAVIDES
Justice

Delivered and filed on the
20th day of October, 2022.

---

[6] To the extent Malone appeals from the dismissal of his claims for injunctive and declaratory relief against TDCJ, those claims became moot when he was transferred to another unit, and we affirm the dismissal of those claims. *See Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000) (concluding that because inmate was transferred out of complained-of facility, "any claims for injunctive relief to correct procedures and practices at that facility are moot"); *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (concluding that request for injunctive and declaratory relief becomes moot when inmate leaves the complained-of facility, and "any suggestion of relief based on the possibility of transfer back to the [facility] is too speculative to warrant relief").

16